**David SCHMIDT, Relator,**

v.

**CITY OF DULUTH, Respondent,**

**Commissioner of Economic Security, Respondent.**

**No. C1–83–1964.**

Court of Appeals of Minnesota.

April 10, 1984.

J. Kent Richards, Duluth, for relator.

Victor D. Ulmer, Asst. City Atty., Duluth, for City of Duluth.

Regina M. Chu, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Economic Security.

Considered and decided by POPOVICH, C.J., and LANSING and WOZNIAK, JJ.

## OPINION

POPOVICH, Chief Judge.

Relator David Schmidt was discharged on July 19, 1983, because relator participated in a shooting incident after work and out of uniform. A claims deputy for the Department of Economic Security found that relator was disqualified from receiving benefits because he was discharged for gross misconduct within the meaning of Minn.Stat. § 268.09, subd. 1(3) (Supp.1983). On relator's appeal, a referee reversed the determination of the claims deputy. On appeal by the City of Duluth, the Commissioner's representative reversed the referee's decision. This court granted certiorari. We affirm.

## FACTS

Relator David Schmidt was employed by the City of Duluth as a senior shelter technician for approximately 9½ years ending October 28, 1982.

Schmidt's duties included maintenance of the shelter, care of animals, and enforcement of animal control ordinances. While on duty, he wore a uniform of green trousers, a khaki shirt with an emblem indicating "Animal Shelter-Duluth," and a jacket of olive green color. He operated a vehicle identified by the Duluth Police Department's shield on the side door panels and by the word, "Animal Shelter."

Schmidt was discharged following a shooting incident that occurred in Duluth during the night of October 15, 1982. After work, Schmidt went to the home of a friend, Tim Peterson, taking along a shotgun. Schmidt and Peterson became intoxicated and decided to frighten the inhabitants of a house that Peterson's girlfriend visited. Three times the pair drove past the house, each time discharging a single shotgun blast. The first two shots were discharged by Peterson, the last by Schmidt. During police investigation, Schmidt admitted his involvement.

Schmidt was criminally charged for his involvement. He pled guilty to assault in the second degree, served time in jail and paid for the damage.

The City's Animal Shelter is under the administrative jurisdiction of the Duluth Police Department. The supervisor of the Shelter reports directly to the deputy police chief. At a disciplinary meeting held on October 29, 1982, Chief of Police Eli Melitich requested Schmidt's discharge pursuant to the Minnesota Veteran's Preference Law, Minn.Stat. § 197.46 (1982).

Schmidt was discharged by the Duluth Civil Service Board on July 19, 1983 after a hearing. The police chief testified that he believed Schmidt's judgment, as evidenced by the shotgun incident, was so poor that his ability to function as an employee of the police department was impaired. The police chief also testified that, after the shooting became public knowledge, he received comments from the public and police officers regarding relator's ability to perform his job. Upholding Chief Melitich's decision to dismiss Schmidt, the Board stated:

> The Board * * * finds that such a violent attack on persons and the property of these persons with such force while using such a deadly weapon constitutes such misconduct on the part of this public employee, who was attached to and wears a uniform of the Duluth City Police Department * * * as to justify the decision of his superior, the Chief of Police, to dismiss him from the service.

> The Board further finds that such misconduct, although it occurred during the employee's off-duty hours, so severely and adversely affects not only the employee's ability to continue in public service, but also affects the ability and integrity of City Government to perform its functions if he should remain employed, as to require his dismissal.

At the hearing before the referee on Schmidt's claim for unemployment compensation benefits, the parties stipulated that the referee could determine the matter based on testimony adduced at the hearing before the Civil Service Board. The referee found that Schmidt was entitled to receive benefits.

Upon review the Commissioner reversed the determination of the referee and found that relator was disqualified from receiving unemployment compensation benefits pursuant to Minn.Stat. § 268.09, subd. 1(3) (supp.1983). The Commissioner noted that Schmidt,

> had a duty to the employer to conduct himself as a law abiding citizen and not engage in criminal conduct whether on duty or off duty which endangered the lives and property of others.

The Commissioner determined that relator's involvement in the shooting incident constituted gross misconduct connected with his work or which interfered with and adversely affected his employment with the City of Duluth police department. The Commissioner held that relator Schmidt was disqualified from receiving benefits pursuant to § 268.09, subd. 1(3).

## ISSUE

Whether the record supports the Commissioner's decision that relator's involvement in the shooting incident was gross misconduct connected with his work or which interfered with and adversely affected his employment.

## ANALYSIS

1. Judicial review of decisions in economic security cases is extremely limit-

ed. *Group Health Plan, Inc. v. Lopez,* 341 N.W.2d 294 (Minn.App.1983). The court's inquiry is limited to "whether the evidence was such that the [Commissioner] might reasonably make the order or determination which it made." *Chellson v. State Division of Employment Security,* 214 Minn. 332, 336, 8 N.W.2d 42, 45 (1943). In *White v. Metropolitan Medical Center,* 332 N.W.2d 25 (Minn.1983), the Minnesota Supreme Court further outlined the parameters of appellate review in unemployment compensation cases and stated:

> The narrow standard of review requires that findings be reviewed in the light most favorable to the decision, and if there is evidence reasonably tending to sustain them, they will not be disturbed.

2. In this matter, the Commissioner concluded that Schmidt had engaged in "gross misconduct connected with his work" or "gross misconduct which interferes with and adversely affects his employment" within the meaning of § 268.09, subd. 1(3).

Minn.Stat. § 268.09, subd. 1 (Supp.1983) provides, in relevant part:

> (3) Discharge for gross misconduct. The individual was discharged for gross misconduct connected with his work or gross misconduct which interferes with and adversely affects his employment. For separation under this clause, the commissioner shall impose a total disqualification for the benefit year and cancel all of the wage credits from the last employer from whom he was discharged for gross misconduct connected with his work.
>
> For the purpose of this clause "gross misconduct" is defined as misconduct involving assault and battery or the malicious destruction of property or arson or sabotage or embezzlement or any other act, including theft, the commission of which amounts to a felony or gross misdemeanor. * * *
>
> If an individual is convicted of a felony or gross misdemeanor for the same act or acts of misconduct for which the individual was discharged, the misconduct is conclusively presumed to be gross mis-

conduct if it was connected with his work.

Here, there is no dispute that relator Schmidt committed an act of gross misconduct by the commission of a felony, assault in the second degree. The sole issue is whether his gross misconduct was connected with his work or interfered with and adversely affected his employment within the meaning of § 268.09, subd. 1(3).

3. This section of the statute has not yet been construed by the Minnesota courts. Relator suggests, and we agree, that a standard must be enunciated to give independent content to the phrase, "interfere with and adversely affect" employment. We hold, in determining whether an employee's gross misconduct interferes with or adversely affects his employment, the standard is whether, by reason of his action, he can no longer effectively perform the services for which he was employed.

Applying this standard to Relator's actions, the record supports a conclusion that he could no longer effectively perform his work as senior animal shelter technician. As a public employee whose function was, in part, to ensure compliance with and enforcement of laws and ordinances, the City of Duluth and the police department had the right to expect relator to refrain from criminal conduct whether on-duty or off-duty. Schmidt's involvement and active participation in shooting at an occupied residence violated standards which the employer had a right to expect of him.

## DECISION

We find that there is sufficient and adequate evidence reasonably supporting the finding of the Commissioner's representative that relator was terminated for gross misconduct interfering with and adversely affecting his employment.

The decision of the representative of the Commissioner of Economic Security is hereby affirmed. Relator is disqualified from receiving unemployment benefits.

Affirmed.