Michael REED, Respondent,

v.

**MINNESOTA DEPARTMENT OF TRANSPORTATION, GOLDEN VALLEY, DISTRICT 5, Relator,**

**Commissioner of Jobs and Training, Respondent.**

**No. C4-88-4.**

Court of Appeals of Minnesota.

May 3, 1988.

Review Denied June 29, 1988.

Anthony Rossini, Minneapolis, for Michael Reed.

Hubert H. Humphrey, III, Atty. Gen., Alan C. Page, Asst. Atty. Gen., St. Paul, for Minnesota Dept. of Transp., Golden Valley, Dist. 5.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Jobs and Training.

Heard, considered and decided by CRIPPEN, P.J., and SCHULTZ[*] and FLEMING, JJ.

## OPINION

HAROLD W. SCHULTZ, Acting Judge.

A Commissioner's representative from the Minnesota Department of Jobs and Training determined that respondent employee, who had engaged in off-duty harassment of other employees, was not guilty of misconduct for unemployment compensation purposes. Concluding that respondent's actions constituted misconduct as a matter of law, we reverse.

## FACTS

Respondent Michael Reed was employed by the Minnesota Department of Transportation ("DOT") as a highway technician until July 20, 1987, when he was discharged for failing to obey an order to discontinue his off-duty harassment of two female co-employees.

Reed applied for unemployment compensation, and a hearing was conducted by a referee from the Department of Jobs and Training to determine his entitlement to benefits. At the hearing, Reed's former unit supervisor, Keith Slater, testified on behalf of the DOT. According to Slater, the two female employees in question had contacted him because they were receiving unwanted mail and attention from Reed. The record indicates this complaint occurred in April 1987. Slater and a DOT assistant district engineer discussed the problem and sent Reed a letter directing him not to contact the women or send them gifts. The DOT also suggested the women send Reed a letter asking him to stop contacting them. The women complied with this request; nevertheless, Reed continued his actions.

When Reed failed to comply with the DOT's directives, he was suspended for five days and was informed that if he continued his actions, he would be terminated. Reed continued to contact the two employees and was discharged, effective July 20, 1987.

Slater testified he had contacted the DOT's attorneys before Reed was discharged, and had been informed that because the harassment was related to the work environment, and because the contact had originated at the DOT, the female employees had a case for sexual harassment. Reed was therefore discharged to prevent any possibility of a lawsuit by the women involved.

In response to questioning, Slater indicated Reed's original contact with one of the women had taken place while they were working on the same highway crew, and the woman was deliberately reassigned to another position because of the work environment.

Michael Reed also testified at the hearing, indicating he had not contacted either of the two women at work; all of his contacts took place outside working hours. Reed also stated:

> [T]here was no conversations, there was no working in the same area or the same

---

[*] Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

crew, we were completely isolated. And * * * we were completely isolated by design as of December 1986, [one woman] was assigned to a different crew because of my first initial contact with her by phone. And from that point on we were by design kept apart in the working environment by the employer.

Following the hearing, the referee determined Reed had been discharged for misconduct. The referee reasoned:

If the employer had not taken action against the claimant it would have left itself open for a sexual harassment complaint from the two female employees.

Reed appealed to a Commissioner's representative, who reversed the decision of the referee, determining the DOT had not proven Reed's misconduct was "connected with work" or misconduct "interfering with and adversely affecting employment," as required by the unemployment compensation laws.

## ISSUE

Did Reed's off-duty actions constitute misconduct connected with his work or which interfered with or adversely affected his employment?

## ANALYSIS

An employer has the burden of proving misconduct disqualifying an employee from the receipt of unemployment compensation benefits. *Lumpkin v. North Central Airlines, Inc.,* 296 Minn. 456, 459–60, 209 N.W. 2d 397, 400 (1973). The supreme court has defined "misconduct" as follows:

The intended meaning of the term 'misconduct' is limited to conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which an employer has a right to expect of its employees or in carelessness or negligence of such a degree or recurrence as to manifest equal culpability, wrongful intent or evil design or to show an intentional and substantial disregard of the employer's interests or

of the employee's duties and obligations to his employer. * * *

*Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973).

The legislature has specifically stated that a disqualification for misconduct requires the following:

(2) The individual was discharged for misconduct * * * connected with work or for misconduct which interferes with and adversely affects his employment.

Minn.Stat. § 268.09, subd. 1(2) (1986). The DOT concedes none of Reed's contacts with the women actually occurred during working hours; nevertheless, the DOT claims Reed's actions were sufficiently connected with his employment to constitute misconduct.

■ The DOT first argues that because Reed was ordered to stop harassing the two women employees, his violation of that order constituted insubordination, and thus misconduct.

In general, we have held "if the request of the employer is reasonable and does not impose an unreasonable burden on the employee, a refusal will constitute misconduct." *Sandstrom v. Douglas Machine Corp.,* 372 N.W.2d 89, 91 (Minn.Ct.App. 1985). Here, we believe the question whether the DOT's request was reasonable must turn upon whether that request was "connected with" Reed's employment, or whether it "interfered with or adversely affected his employment."

The case of *Booher v. Transport Clearings of Twin Cities, Inc.,* 260 N.W.2d 181 (Minn.1977), cited by the DOT, does not answer this question. In *Booher,* the employee's activities, which had caused dissension among other personnel in her office, took place during office hours, and the question whether her conduct was "connected with" her employment was not at issue.

The issue of an employer's request to an employee concerning the employee's off-

duty activities is one of first impression in Minnesota. Cases from other jurisdictions involve different fact situations, and are therefore of limited value.[1]

In *Sandstrom*, we cited with approval the California case of *Cerberonics, Inc. v. California Unemployment Insurance Appeals Board*, 152 Cal.App.3rd 172, 199 Cal. Rptr. 292 (1984), which noted that any test of reasonableness must take into consideration whether the employer's request is "consistent with public policy." *Sandstrom*, 372 N.W.2d at 92.

Public policy certainly discourages sexual harassment. The human rights statutes in Minnesota condemn sexual harassment as an unfair employment practice. Minn. Stat. §§ 363.03, 363.01, subd. 10 (1986). In addition, the unemployment compensation statutes themselves indicate an employee has good cause to voluntarily separate from employment if the separation occurs as a consequence of sexual harassment. Minn.Stat. § 268.09, subd. 1(1) (1986).[2]

In addition, the legislature has indicated the policy behind the unemployment compensation statutes is to provide for benefits only where a person is unemployed "through no fault of his own." Minn.Stat. § 268.03 (1986); *McGowan v. Executive Express Transportation Enterprises, Inc.*, 420 N.W.2d 592, 595 (Minn.1988); *Smith v. Employers' Overload Co.*, 314 N.W.2d 220,

221–22 (Minn.1981); *Auger v. Gillette Co.*, 303 N.W.2d 255, 257 (Minn.1981).

In view of the public policy discouraging harassment of women, and the fact that Reed's unemployment was not caused through "no fault of his own," we believe the DOT's orders to Reed concerning his off-duty conduct in this case were reasonable, and Reed's violation of that request was therefore misconduct within the meaning of the unemployment compensation statutes.

■ We also believe Reed's harassment of the female workers, by itself, constituted misconduct connected with the workplace. Again, there are no cases in Minnesota which expressly address this issue.[3]

One connection between Reed's conduct and the workplace is found in Reed's own testimony, where he admits the DOT's reassignment of one of the women to another position was the result of his off-duty actions. Slater confirmed this statement in his testimony at the hearing. A Department exhibit contains the following statement: "The complaining employees considered the contacts from [Reed] harassing and disruptive to work performance."

We also conclude the DOT's belief that it would be liable for any lawsuits brought by

1. *See, e.g., Gregory v. Anderson,* 14 Wis.2d 130, 109 N.W.2d 675 (1961), where an employee was determined to have committed misconduct by violating his employer's rule prohibiting consumption of alcoholic beverages by truck drivers.

2. "Sexual harassment" is defined for purposes of the voluntary quit section as follows:

Sexual harassment means unwelcome sexual advances, requests for sexual favors, sexually motivated physical contact or other conduct or communication of a sexual nature when: (1) the employee's submission to such conduct or communication is made a term or condition of the employment, (2) the employee's *submission to or rejection of such conduct or communication is the basis for decisions af-*

fecting employment, (3) such conduct or communication has the purpose or effect of substantially interfering with an individual's work performance or creating and intimidating, hostile, or offensive working environment and the employer knows or should know of the existence of the harassment and fails to take timely and appropriate action. Minn.Stat. § 268.09, subd. 1(1) (1986).

3. While the case of *Schmidt v. City of Duluth,* 346 N.W.2d 671 (Minn.Ct.App.1984) involved an employee's off-duty conduct, an important distinction between this case and the *Schmidt* case is that the employee's conduct in *Schmidt* involved gross misconduct—assault in the second degree. Here, on the other hand, the issue is whether Reed's actions constituted misconduct, and not gross misconduct.

the female employees would establish the requisite connection between Reed's actions and the workplace. Regardless of whether or not the two female co-workers could actually establish a prima facie case of sexual harassment against the DOT, Reed's discharge was in fact based upon a reasonable belief that such litigation was possible.

DECISION

Reversed.