**Peggy L. FORESTER, Relator,**

v.

**VALUE TRAVEL, INC., Commissioner of Jobs and Training, Respondents.**

No. C3–93–784.

Court of Appeals of Minnesota.

Oct. 12, 1993.

Joel M. Anderson, Joel M. Anderson & Associates, White Bear Lake, for relator Peggy L. Forester.

Edward J. Lechner, E.J. Lechner, J.D., Ltd., Minneapolis, for respondent Value Travel, Inc.

Kent E. Todd, Dept. of Jobs and Training, St. Paul, for Respondent Com'r of Jobs and Training.

Considered and decided by PARKER, P.J., and HUSPENI and DAVIES, JJ.

## OPINION

HUSPENI, Judge.

Relator Peggy Forester seeks review of a decision issued by a Commissioner's representative with the Department of Jobs and Training. The Commissioner's representative concluded that Forester was disqualified from receiving unemployment compensation benefits because she had refused to sign a lease as directed by her employer/lessor, respondent Value Travel, Inc. We reverse.

## FACTS

In February 1990, relator Peggy Forester and her husband moved into an apartment in Oakdale Village, a complex owned by respondent Value Travel, Inc. Each resident of Oakdale Village was required to sign a lease. Forester and her husband signed a lease for $425 per month.

In June 1990, Value Travel employed Forester as a housekeeper. Value Travel's employees were not required to be residents of Oakdale Village, but if an employee resided in the complex, the employee's rent was deducted from wages. Accordingly, when Forester began working for Value Travel, her rent was deducted from her wages. Forester did not sign an agreement authorizing such procedure.

In March 1991, Forester was promoted to assistant manager. There is evidence that her duties included showing and leasing apartments, collecting rent, and maintaining resident relations. Several months later, Forester and her husband moved into a different apartment in another building in Oakdale Village.

In October 1991, Forester and several other employees filed a minimum wage complaint with the Department of Labor and Industry. Value Travel received notice of the complaint on November 13, 1991. Forester claims that three days later, on November 16, 1991, she received a new lease from Value Travel indicating that the rent for her new apartment would be $470. Forester claims the lease was back-dated to October 1, 1991. Value Travel claims the lease was provided to Forester "around" October 1. Value Travel also claims that when Forester requested the new apartment, she was informed that her rent would be $470. Forester disputes that claim, and argues the value of the new apartment was between $425 and $450.

Forester did not sign the new lease. Eventually, in July 1992, Forester questioned the amount of her rent. Her supervisor responded that the amount of the rent was correct, and had been in effect since October 1, 1991. In late September or early October 1992, Forester again questioned the amount of her rent. Upon checking its records, Value Travel discovered that Forester had not yet signed the lease. Value Travel thereupon warned Forester that unless she signed the lease within five days, her employment would be terminated. Forester refused to sign the lease, and she was discharged.

Forester filed a claim for unemployment benefits, which was denied on the basis that she had committed disqualifying misconduct. Forester appealed to a referee, who found that Forester had received notice of the change in her lease three days after Value Travel had learned of her minimum wage complaint. The referee concluded that Forester did not commit misconduct by refusing

to agree to Value Travel's "unilateral" change in the lease agreement.

Value Travel appealed to a Commissioner's representative, who reversed the referee's findings and decision. The Commissioner's representative found that Forester was given the new lease on or about October 1, 1991. The Commissioner's representative also found that Forester must have known that the rental value of the new apartment was greater than the rental value of her old apartment. The Commissioner's representative concluded that Forester's failure to sign the lease constituted misconduct disqualifying her from receiving unemployment benefits.

## ISSUE

Did the Commissioner's representative err by concluding that Forester's refusal to sign the lease constituted misconduct for unemployment compensation purposes?

## ANALYSIS

Value Travel does not claim that Forester's work was unsatisfactory. Rather, the only reason Forester was discharged was her refusal to sign the lease for her apartment. Forester claims her failure to sign the lease did not constitute misconduct that affected her employment relationship (rather than her landlord-tenant relationship) with Value Travel.

The legislature has stated that disqualifying misconduct for unemployment compensation purposes must be "connected with work" or must "interfere[ ] with and adversely affect[ ] employment." Minn.Stat. § 268.09, subd. 1(b) (1992). The Commissioner's representative did not explain her conclusion that Forester's failure to sign the lease was connected with her work or interfered with and adversely affected her employment.

This particular issue has not previously been addressed by the courts in Minnesota. The courts have considered other situations involving the issue whether an employee's actions were connected with work or inter-

fered with and adversely affected employment. See, e.g., McGowan v. Executive Express Transp. Enters., Inc., 420 N.W.2d 592 (Minn.1988) (employee's refusal to pick up employer's personal prescription constituted misconduct where employer was a small business, employment agreement stated the employee would perform incidental duties, and employee's refusal to pick up prescription would have adversely affected the company's operations); Reed v. Minnesota Dep't of Transp., 422 N.W.2d 537 (Minn.App.1988), pet. for rev. denied (Minn. June 29, 1988) (employee's failure to comply with employer's reasonable request to cease off-duty harassment of coworkers constituted misconduct connected with employment or interfering with and adversely affecting employment); Worthington Tractor Salvage, Inc. v. Miller, 346 N.W.2d 168 (Minn.App.1984) (employee did not commit misconduct by failing to move his residence as requested by employer where there was insufficient evidence that employee's residence interfered with the quality of his work).

In the present case, Value Travel admitted that Forester's work was satisfactory. Value Travel presented no evidence that Forester's refusal to sign the lease interfered with or otherwise affected her employment relationship. Nor does the record suggest that Forester's relationship with Value Travel as a tenant was connected with her work relationship. Although Forester's rent was deducted from her paychecks, there was no written agreement mandating such procedure. Furthermore, the record establishes that employees of Value Travel were not required to be residents; thus Forester could have been evicted, while still remaining an employee of Value Travel.

Value Travel points out that, as assistant manager, Forester's duties included requiring all tenants to sign leases. Value Travel concludes that Forester's own failure to sign a lease violated the terms of her employment relationship.[1] We disagree. Forester refused to sign the lease in her capacity as a tenant, not as an employee.

1. Value Travel would extend the basis of this court's inquiry to the hypothetical situation where an employee such as Forester refused to require another tenant to sign a lease. We decline to speculate about a factual situation that is not before us.

**670**

## DECISION

The record does not support a determination that Forester's refusal to sign a lease was connected with work or interfered with and adversely affected her employment. In light of our decision, we need not address Forester's remaining arguments.

**Reversed.**