**Bruce E. HEIN, Relator,**

v.

**GRESEN DIVISION, Respondent,**

**Commissioner of Economic Security, Respondent.**

No. C2–96–385.

Court of Appeals of Minnesota.

Aug. 13, 1996.

Carl M. Warren, Neil Kliebenstein, Student Attorney, University of Minnesota Civil Practice Clinic, Minneapolis, for Relator.

Gresen Division, Dana Corporation, Minneapolis, Respondent pro se.

Kent E. Todd, Minnesota Department of Economic Security, St. Paul, for Respondent.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Considered and decided by DAVIES, P.J., and AMUNDSON and HOLTAN, JJ.

## OPINION

HARVEY A. HOLTAN, Judge.*

The Commissioner's representative disqualified relator Bruce Hein from receiving reemployment insurance benefits, ruling that Hein was discharged for misconduct and did not make reasonable efforts to retain his job. We reverse.

## FACTS

For 22 years, Hein worked for Gresen Division, Dana Corporation, a manufacturer of hydraulic valves. At the time of his discharge, Hein worked as a lead person in the receiving department, and his duties included driving a forklift in a warehouse where other employees worked.

On January 6, 1994, Hein's employer required him to take a drug test; Hein had been observed at work with glassy eyes and incoherent speech. Hein tested positive for cocaine and amphetamines. Hein was placed on medical leave of absence and completed chemical dependency treatment. On March 14, 1994, Hein returned to work and signed an agreement stating that, in consideration of continued employment, he would complete treatment and aftercare and submit to random drug testing for two years. The agreement also stated that Hein would be discharged if he failed another drug test. Hein attended all prescribed aftercare meetings between his return to work and his discharge.

On May 20, 1994, when Hein's employer required him to take a random drug test, Hein tested positive for D-methamphetamine, an illegal drug. Hein had taken the drug several days before, while off-duty. At an aftercare meeting on May 19, Hein failed to disclose that he had taken an illegal drug. Hein was discharged on May 20, 1994, for violating the March 14 agreement.[1]

1. A Department claims representative denied Hein benefits. After a hearing, which Hein failed to attend, a reemployment insurance judge reversed the disqualification, but the Commis-

## ISSUES

1. Was Hein discharged for misconduct?

2. Did Hein make reasonable efforts to retain employment?

## ANALYSIS

An individual is disqualified from receiving certain reemployment insurance benefits if "[t]he individual was discharged for misconduct * * * connected with work or for misconduct which interferes with and adversely affects employment." Minn.Stat. § 268.09, subd. 1(b) (1994). The statute contains the following exception:

> An individual shall not be disqualified under paragraphs (a) and (b) under any of the following conditions:
>
> *    *    *    *    *    *
>
> (2) the individual is separated from employment due to personal, serious illness provided that such individual has made reasonable efforts to retain employment.
>
> An individual who is separated from employment due to the individual's illness of chemical dependency which has been professionally diagnosed or for which the individual has voluntarily submitted to treatment and who fails to make consistent efforts to maintain the treatment the individual knows or has been professionally advised is necessary to control that illness has not made reasonable efforts to retain employment.

Minn.Stat. § 268.09, subd. 1(c)(2).

■■■■ The Commissioner's representative ruled that Hein was discharged for misconduct and that the "serious illness" exception does not apply because Hein did not make reasonable efforts to retain employment. The Commissioner's representative's fact findings must be viewed in the light most favorable to the decision below, and we will not disturb those findings if there is evidence reasonably tending to support them. *Ress v. Abbott N.W. Hosp.*, 448 N.W.2d 519, 523 (Minn.1989). We are not bound by the Com-

missioner's representative's conclusions of law, however, and whether events constitute misconduct is ultimately a question of law. *Id.* "On appeal, because of the unemployment compensation act's remedial nature, we narrowly construe the disqualification provisions." *Id.*

■■■■ 1. Hein argues that his taking drugs while off-duty did not constitute misconduct "connected with work" or "which interfere[d] with and adversely affect[ed] employment." Minn.Stat. § 268.09, subd. 1(b). The employer conceded at the hearing that the second drug test had been purely random and had not been prompted by any particular suspicion of continued drug use.

We conclude that Hein was discharged for committing disqualifying misconduct.

The supreme court has stated that because the legislature provided a "serious illness" exception, it intended to include behavior resulting from a serious illness, such as chemical dependency, as misconduct. *Moeller v. Minnesota Dep't of Transp.*, 281 N.W.2d 879, 882 (Minn.1979).

Our opinion in *Reed v. Minnesota Dep't of Transp.*, 422 N.W.2d 537 (Minn.App.1988), *review denied* (Minn. June 29, 1988), is particularly relevant here. In *Reed*, a male highway technician was discharged after he failed to heed his employer's order to cease his off-duty harassment of two female co-workers. *Id.* at 538. The issue was whether this conduct was connected to or interfered with work. *Id.* at 539. We held that the employee's violation of his employer's request constituted misconduct connected with the employment because the request regarding the employee's off-duty conduct was reasonable in light of the public policy against harassment. *Id.* at 540. We held that the *actual harassment also was connected with the employment* because the co-workers had to be reassigned and because the employer reasonably believed that it could be named in lawsuits brought by the co-workers. *Id.*

sioner's representative then reversed the judge and disqualified Hein. We reversed and remanded for a new hearing because the Department was partially at fault for Hein's failure to present testimony at the hearing. *Hein v. Gresen Div.,*

*Dana Corp.,* 538 N.W.2d 487 (Minn.App.1995). After a second hearing, the judge and the Commissioner's representative both affirmed the Department's original disqualification.

The employer's requirement that Hein abstain from illegal drug use while off-duty was reasonable in light of the public policy against such use. Hein committed misconduct "connected with" his employment because he violated the agreement which made his continued employment conditional upon remaining drug-free. Hein violated a standard to which his employer had the right to expect adherence. The actual drug use also constituted misconduct that interferes with employment because Hein operated heavy machinery that posed a danger to others if he were under the influence of drugs. *See Independent Sch. Dist. No. 709 v. Hansen*, 412 N.W.2d 320, 323–24 (Minn.App.1987) (drinking on job constituted misconduct even though record did not indicate that employee had been intoxicated).

■ 2. Such conclusion does not end our inquiry, however. Because Hein was discharged due to his drug addiction, he is not disqualified from receiving benefits if he made reasonable efforts to retain employment. The Commissioner's representative concluded that Hein did not make reasonable efforts because he

> did not disclose to his counselor or to the members of his aftercare group that he had taken an illegal drug and had suffered a relapse.

The seminal case on the "reasonable efforts" exception, as it pertains to chemical dependency, is *Moeller*. There the supreme court, in reversing the disqualification by the Commissioner, stated:

> The Commissioner in the instant case held that the employee had not made a reasonable effort to retain his employment because he deliberately began drinking again, even though he was aware of his illness and the necessary treatment. This finding by the Commissioner ignores the nature of the disease of alcoholism and is predicated on the belief that once an alcoholic begins treatment he is able to control his actions. Alcoholism is a chronic illness characterized by remissions and exacerbations. The statute only requires that the employee make a *reasonable* effort to retain his employment. Given the nature of the disease, it is unreasonable to require

the employee to maintain total abstinence even after he enters treatment. * * *

> In determining what is a reasonable effort to retain employment, the Commissioner must determine what is reasonable for the particular employee under the circumstances of that case.

*Moeller*, 281 N.W.2d at 882 (citation omitted). The supreme court held that the employee, who had voluntarily undergone treatment in attempting to control his addiction and who had been very concerned about retaining his job, had made reasonable efforts as required by the statute. *Id.*

The supreme court next addressed this issue in *Leslin v. County of Hennepin*, 347 N.W.2d 277 (Minn.1984). The court stated that the chemical dependency provision in the serious illness exception, which requires consistent efforts to maintain necessary treatment, was added in response to, and codifies the import of, *Moeller. Id.* at 279.

> That is, one suffering from a chemical dependency *need not* maintain total abstinence from chemicals or *achieve total success in treatment* to make reasonable efforts to retain his employment. However, such an individual must "make consistent efforts to maintain the treatment he knows or has been professionally advised is necessary to control that illness." In sum, the statutory standard requires the Commissioner to *evaluate the claimant's efforts, not the results.*

*Leslin*, 347 N.W.2d at 279 (emphasis added). We have applied this standard in a number of cases. *See Peksa v. Fairview–Southdale Hosp.*, 512 N.W.2d 913, 917–18 (Minn.App. 1994) (reversing finding of no reasonable efforts where employee underwent treatment, attended AA meetings, could not refrain from drinking, and was concerned about his job); *Hansen*, 412 N.W.2d at 325 (upholding finding of reasonable efforts where employee completed treatment and attended AA meetings); *Umlauf v. Gresen Mfg.*, 393 N.W.2d 198, 200 (Minn.App.1986) (upholding finding of no reasonable efforts where employee failed to attend necessary aftercare).

We hold that the evidence is insufficient to support a finding that Hein did not make

reasonable efforts to retain employment. Under *Moeller*, reasonable efforts cannot be measured by complete abstinence. The Commissioner's representative attempted to circumvent *Moeller* by finding that reasonable efforts required that Hein immediately and fully disclose any relapse. There is no evidence in the record, however, supporting the Commissioner's representative's statement that "[t]otal honesty and full disclosure of 'slips' are fundamental to the treatment of chemical dependency." Although full disclosure may be one step on the road to recovery, the supreme court stated in *Leslin* that total success in treatment is not required to make efforts reasonable. 347 N.W.2d at 279. Other than Hein's failure to disclose his relapse at the next aftercare meeting, there is no evidence that Hein did not want to treat his addiction and retain his job; on the contrary, Hein had completed the treatment phase and had attended every required aftercare meeting. Although there may have been ample evidence about the *results* of Hein's treatment, there was little adverse evidence directly addressing his *efforts*. Moreover, there was no evidence that disclosure is more important to successful treatment than abstinence; therefore, we do not require the former where we cannot require the latter.[2]

## DECISION

Hein's misconduct does not disqualify him from receiving reemployment insurance benefits because he made reasonable efforts to maintain treatment and retain his employment.

**Reversed.**

---

[2]. We note our concern that this process may become an "enabler," undermining the restorative intent of the process itself.