**Jerold MOELLER, Relator,**

**v.**

**MINNESOTA DEPARTMENT OF TRANSPORTATION, Respondent,**

**Department of Economic Security, Respondent.**

**No. 49117.**

Supreme Court of Minnesota.

July 27, 1979.

---

Patricia A. Keefe, Southern Minnesota Regional Legal Services, Inc., Mankato, for relator.

Warren Spannaus, Atty. Gen., and Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for Minn. Dept. of Transportation.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Peter C. Andrews, Asst. Atty. Gen., and Frank W. Levin, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Economic Security.

Heard before KELLY, SCOTT, and WAHL, JJ., and considered and decided by the court en banc.

WAHL, Justice.

This case is before us on writ of certiorari to the Commissioner of the Department of Economic Security, who held that Jerold Moeller was disqualified for unemployment compensation benefits pursuant to Minn.St. 268.09, subd. 1, because he was discharged for misconduct due to his own serious illness and had not made reasonable efforts to retain his employment by not maintaining total abstinence from alcohol. We reverse.

Mr. Moeller began working for the Minnesota Department of Transportation in 1955. In December 1976, he was suspended for 5 days, demoted, and warned that further deterioration of his own work production, insubordination, or unauthorized leaves could result in dismissal. He entered a treatment program for alcoholic addiction on December 29, 1976, but the prognosis was guarded when he was released on January 27, 1977. He remained sober for 5 or 6 months but was again hospitalized in a detoxification center from July 24 to July 27, 1977.

Mr. Moeller failed to report for work from August 15 to August 30. He called his supervisor, Mr. Trooien, on August 17 and 19, requesting vacation to cover his absences from August 15 through 19, but he failed to call on or after August 22. Between August 22 and August 26, Mr. Trooien unsuccessfully attempted to contact Mr. Moeller at his home. Mr. Moeller, who had been drinking heavily and had blacked

out for several days, entered a detoxification unit in an advanced state of intoxication on August 27. He called his supervisor on August 30 and was informed that his employment had been terminated. At no time did Mr. Moeller request a medical leave, although his employer's policy was to liberally grant such leaves. Mr. Moeller entered a treatment program for alcoholism on September 2, after being discharged from the detoxification unit.

Mr. Moeller's claim for unemployment compensation benefits was denied because the claims deputy found that he had voluntarily quit and that, although Mr. Moeller was under medical treatment, he had not made reasonable efforts to retain his employment. Mr. Moeller appealed, and the appeals tribunal held that he had been discharged for misconduct, i. e., the failure to report to work or notify his employer, and disqualified him for benefits. The Commissioner vacated this decision and remanded the case for further evidence on what efforts Mr. Moeller could have made to retain his employment.

After the second hearing, the appeals tribunal again disqualified Mr. Moeller due to misconduct, because he deliberately refused to abide by the rules of treatment. On appeal to the Commissioner, the disqualification was affirmed, the Commissioner holding that, where the employee is addicted to alcohol but has been made aware of his addiction and how to control his disease, his deliberate refusal to abide by treatment, by failing to maintain total abstinence, indicates that he has not made reasonable efforts to retain his employment.

The issues raised on appeal are whether an employee discharged for absenteeism due to alcoholism is discharged for miscon-duct within the meaning of Minn.St. 268.09, and subd. 1(2), and whether under the facts and circumstances of this case the employee made a reasonable effort to retain his employment.

1. We must first determine whether discharge for absenteeism due to alcoholism is a discharge for misconduct within the meaning of § 268.09, subd. 1(2).[1] We have defined misconduct for purposes of this statute as:

"* * * conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as a result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' * * *."

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374, 204 N.W.2d 644, 646 (1973). See, also, *Feia v. St. Cloud State College*, 309 Minn. 564, 244 N.W.2d 635 (1976); *Ideker v. LaCrescent Nursing Center, Inc.*, 296 Minn. 240, 207 N.W.2d 173 (1973).

Some courts have held that repeated absences from work without good cause and without prior notice constitute misconduct even when those absences are due to alcoholism, because such absences evidence willful disregard of the employer's interests.

---

1. Minn.St. 268.09, subd. 1, provides:

"An individual shall be disqualified for waiting week credit and benefits for the duration of his unemployment and until he has earned four times his weekly benefit amount in insured work:

* * * * * *

"(2) Discharge for misconduct. If such individual was discharged for misconduct, not amounting to gross misconduct connected with his work or for misconduct which interferes with and adversely affects his employment.

"An individual shall not be disqualified under clauses (1) and (2) of this subdivision under any of the following conditions:

* * * * * *

"(b) If such individual is separated from employment due to his own serious illness provided that such individual has made reasonable efforts to retain his employment; * * *."

See, e. g., *Booker v. Appeal Board of Michigan Emp. Sec. Comm'n*, 369 Mich. 547, 120 N.W.2d 169 (1963); *Viale v. Unemployment Comp. Bd. of Rev.*, 183 Pa.Super. 361, 133 A.2d 588 (1957). To the contrary, no misconduct has been found in similar factual situations if alcoholism prevents an individual from forming the willful intent to disregard the employer's interests. See, e. g., *Jacobs v. California Unemployment Insurance App. Bd.*, 25 Cal.App.3d 1035, 102 Cal. Rptr. 364 (1972); 1B C.C.H. Unemp. Ins. Rptr. ¶ 1970.51 (Wausau Steel Corp. v. Ind. Comm'n February 10, 1966); 11 C.C.H. Unemp. Ins. Rptr. ¶ 8290.50 (Wash. Comm'n Dec. 4514, May 27, 1958); C.C.H. New York Unemp. Ins. Rptr. ¶ 1970.50 (App. Bd. Dec. 55, 732–56).

■ The Minnesota Legislature has indicated that if an employee is discharged for misconduct due to serious illness, the employee need not be disqualified for benefits. This exception indicates a legislative intent to include as misconduct behavior which results from illness, even though the employee has no control over the illness. In the instant case the employee failed to report to work or notify his employer. We hold that this is misconduct within the meaning of § 268.09, subd. 1(2), even though the employee is addicted to alcohol.[2]

2. We must next determine whether this employee made reasonable efforts to retain his employment. If he did not, he may still be disqualified for unemployment compensation benefits, even though his misconduct is the result of serious illness.

The Commissioner in the instant case held that the employee had not made a reasonable effort to retain his employment because he deliberately began drinking again, even though he was aware of his illness and the necessary treatment. This finding by the Commissioner ignores the nature of the disease of alcoholism and is predicated on the belief that once an alcoholic begins treatment he is able to control his actions. Alcoholism is a chronic illness characterized by remissions and exacerbations. See, Wharton, "Treatment, Rehabilitation, and The Revolving Door Alcoholic," Minn. State Bar Ass'n C.L.E., Chemical Dependency and the Courts, 21, 22. The statute only requires that the employee make a *reasonable* effort to retain his employment. Given the nature of the disease, it is unreasonable to require the employee to maintain total abstinence even after he enters treatment. The record in this case indicates that the employee had a guarded prognosis at the time he left treatment in January 1977. Such a prognosis does not support the Commissioner's conclusion that the employee deliberately began drinking again.

In determining what is a reasonable effort to retain employment, the Commissioner must determine what is reasonable for the particular employee under the circumstances of that case. See *Jacobs v. Calif. Unemp. Ins. App. Bd., supra*, where the court required the unemployment board to determine whether or not the employee had the ability to abstain from drinking. See also *Mooney v. Board of Review*, 39 Pa. Cmwlth. 404, 395 A.2d 675 (1978), where the court denied unemployment compensation benefits because it found that the employee had the ability to refrain from heavy drinking.

■ In the instant case the employee attempted to retain his job by voluntarily entering treatment in December 1976, after he had been suspended, demoted, and warned about his poor work production, insubordination, and unauthorized leaves. He entered treatment again in September 1977. On August 30, as soon as he recovered from his intoxication, he called his employer to inquire about his job. That he did not request a medical leave does not necessarily mean that he did not make a reasonable effort to retain his employment. A review of his entire record indicates that he was very concerned about retaining his job and made a reasonable effort to do so by attempting to control his addiction to alcohol.

2. We have recognized that alcoholism is a disease. See, *Melin v. Northwestern Bell Tel. Co.*, 266 N.W.2d 183 (Minn.1978); *State v. Fearon*, 283 Minn. 90, 166 N.W.2d 720 (1969). See, also, *Adams v. Weinberger*, 548 F.2d 239, 39 A.L.R. Fed. 171 (8 Cir. 1977).

He therefore qualifies for unemployment compensation benefits pursuant to § 268.09, subd. 1.

Reversed.

OTIS, J., took no part in the consideration or decision of this case.