**Stephen R. KEMP, Relator,**

v.

**U.S. DEPARTMENT OF AGRICULTURE, Department of Economic Security, Respondents.**

No. C5–85–2054.

Court of Appeals of Minnesota.

April 22, 1986.

Stephen R. Kemp, pro se.

Sarah Theibar, Minneapolis, for U.S. Dept. of Agriculture.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Economic Sec.

Considered and decided by CRIPPEN, P.J., and WOZNIAK and SEDGWICK, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

Relator Stephen Kemp was discharged by respondent United States Department of Agriculture effective May 5, 1985. He applied for unemployment compensation but was denied benefits by a claims deputy of the Department of Economic Security, who determined that relator was terminated for misconduct. A Department referee conducted a hearing and issued findings affirming the claims deputy's determination. On appeal, the Commissioner's representative adopted the referee's findings and affirmed the determination. We affirm.

## FACTS

Relator Stephen Kemp was employed by the United States Department of Agriculture in December 1984. He worked in the Department's Animal and Plant Health Inspection Service Division. When he began working, Kemp received a copy of an employee handbook, which outlined several types of recognized leave, including annual leave, sick leave, leave without pay, and absence without leave (AWOL).

Kemp soon began to have problems with absenteeism. A memo dated March 5, 1985 warned Kemp that his use of leave was excessive, that he needed to obtain prior approval from his supervisor for annual

leave, and that he should notify his supervisor personally and as soon as possible when he was ill. The memo emphasized that if his future requests for leave were not made in advance, those absences would result in leave without pay. The warning included attachments from the employee handbook which indicated that supervisors should be notified regarding leave, that supervisors could deny requests for leave, and that absences without leave would result in disciplinary action.

Kemp's attendance problems did not improve, and he received a second written warning on March 20, again indicating that approval of leave must be granted in advance by a supervisor. The warning also stated that he was absent without leave on March 15 and that further absences without leave would result in a recommendation for "disciplinary action."

Another written warning was issued to Kemp on April 10, indicating that his leave record was "unsatisfactory." The warning indicated that on March 28 Kemp had not requested approval in advance for a dental appointment, that on April 2 he did not have a valid reason for failing to report for work, and that on April 3 a friend had called in sick for him, even though Kemp was capable of calling in personally.

The third warning concluded that in the future Kemp's absences would be closely monitored and that he would be required to abide by certain instructions. Those instructions prohibited him from using annual leave (except for emergencies) unless scheduled in advance and approved by a supervisor. The instructions restated the guideline from the employee handbook that an hour of leave requires at least an hour's notice. Kemp was instructed that any use of annual leave for emergency purposes required him to furnish adequate proof that an emergency did occur which prevented him from reporting to work. Until acceptable verification was received, he would be carried as AWOL. He would be granted leave without pay in lieu of annual leave under the same conditions as those described for the use of annual leave. He would not be granted sick leave without an acceptable medical or other satisfactory certificate. Finally, he was informed that actions contrary to the above instructions would result in an AWOL charge and that any failure to follow the instructions could result in a recommendation for serious disciplinary action against him.

On April 17 and 18, Kemp was absent from work without leave. His sole excuse was that he was trying to resolve an eviction notice. On April 26, Kemp was again considered absent without leave when he took the day off to move without receiving permission in advance from his supervisor. On April 30, Kemp did not appear for work and did not call until late in the afternoon. At that time he talked about being "finished" and not being able to come in to work. That same day his employment was terminated, effective May 5, 1985.

## ISSUES

1. Does the evidence sustain a finding of misconduct?

2. Was Kemp discharged due to chemical dependency problems and therefore not disqualified from receiving unemployment compensation benefits?

## ANALYSIS

■ 1. Under Minnesota's economic security laws, an individual discharged from employment for misconduct is disqualified from receiving unemployment compensation benefits. Minn.Stat. § 268.09, subd. 1(2) (1984). Misconduct for these purposes is limited to conduct showing willful disregard of an employer's interests or equally culpable negligence or carelessness, not conduct that is merely inefficient or unsatisfactory. *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973).

In reviewing unemployment compensation cases, this court considers the findings of the Commissioner of Economic Security in the light most favorable to the decision. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983). The find-

ings will not be disturbed if there is evidence reasonably tending to sustain them. *Id.* at 26.

■ Kemp claims that his absences should have been considered excused under his employer's leave policy because he had not exhausted his annual leave or sick leave when he was discharged. As the Commissioner's representative noted, however, Kemp was not discharged solely because he was absent from work, but because he repeatedly ignored respondent's written rules and warnings requiring prior approval before leave is taken. An employee's repeated failure to give notice in advance of intended absences has been held to constitute misconduct. *See, e.g., Flahave v. Lang Meat Packing,* 343 N.W.2d 683, 684 (Minn.Ct.App.1984); *Edwards v. Yellow Freight Systems,* 342 N.W.2d 357 (Minn.Ct.App.1984). Relator's conduct evidenced a willful disregard of both his employer's interests and of the duties and obligations owed to his employer. *See Tilseth,* 295 Minn. at 374–75, 204 N.W.2d at 646.

Kemp also argues that his employer failed to follow its own disciplinary procedures as outlined in the employee handbook. He cites *Hoemberg v. Watco Publishers Inc.,* 343 N.W.2d 676 (Minn.Ct.App. 1984), where it was held that discharged employees could not be denied unemployment compensation benefits when their employer failed to give each of them an individual warning, as promised in an employee handbook. Here, however, the employee handbook specifically stated that absences without leave could subject an employee to "further disciplinary action, including dismissal." In addition, Kemp was informed repeatedly that he should notify his supervisor when he was going to be absent. He also knew that failure to do so could result in a determination that he was absent without leave.

2. Kemp also claims that he was discharged due to chemical dependency problems and that therefore, he should not be disqualified from receiving unemployment compensation benefits. *See Moeller v.*

*Minnesota Department of Transportation,* 281 N.W.2d 879, 880 (1979). Here, as in *Moeller,* failure to report to work without sufficient notification or excuse to the employer demonstrates misconduct. However, in *Moeller* the court held that an employee was entitled to receive unemployment compensation benefits because he had made "reasonable efforts" to retain his employment. *Id.* at 882.

■ The supreme court has more recently discussed a chemically dependent employee's reasonable efforts to retain his employment. *See Leslin v. County of Hennepin,* 347 N.W.2d 277 (Minn.1984). In *Leslin,* the court found that the employees were disqualified from receiving unemployment compensation benefits because they had "failed to make consistent efforts to maintain the necessary treatment." *Id.* at 279. As the *Leslin* court noted, the relevant statute now states that an individual, has not made reasonable efforts to retain employment if he was:

separated from his employment due to his illness of chemical dependency which has been professionally diagnosed or for which he has voluntarily submitted to treatment and who fails to make consistent efforts to maintain the treatment he knows or has been professionally advised is necessary to control that illness * * *.

*Id.* (quoting Minn.Stat. § 268.09, subd. 1(2)(b) (1984)).

Here the Commissioner's representative adopted the referee's findings, which stated:

The claimant had a history of problems with alcoholism. The claimant had successfully completed treatment at the Moose Lake State Hospital in 1981. The claimant had entered but not completed a program for chemical dependency at a local hospital in 1983. In February of 1985, the claimant sought help from the employer's counseling service. The claimant did not regularly attend Alcoholics Anonymous or its equivalent since 1981.

These findings are supported by the record. In addition, the Commissioner's representative noted in his memorandum that Kemp "had reverted to drinking, and had given up regular attendance at support group meetings."

■ There is sufficient evidence here to support the finding that Kemp failed to make consistent efforts to maintain the treatment necessary to control his illness. Kemp argues that he made reasonable efforts to retain his employment because he generally called his employer to explain his absences and because he attended counseling sessions with his employer's service. However, the Commissioner's findings are supported by evidence that Kemp was aware of his problems with chemical dependency, that he had been advised to continue in an alcoholic's support group, and that he failed to abide by this recommendation.

In addition, we note that there was no finding that Kemp was discharged from his employment due to his chemical dependency. His absences may have been due to his alcoholism, but the unapproved absences, not his illness, constitute the misconduct that disqualifies him from benefits.

## DECISION

The evidence sufficiently supports the determination by the Commissioner's representative that relator's frequent unexcused absences and his failure to abide by the employer's leave policy constituted misconduct.

Affirmed.