**Donald R. PRESCOTT, Relator,**

v.

**MOORHEAD STATE UNIVERSITY,
Commissioner of Jobs and
Training, Respondents.**

**No. C2–90–17.**

Court of Appeals of Minnesota.

June 26, 1990.

James Coben, Supervising Atty., St. Paul, for relator.

Hubert H. Humphrey, III, Atty. Gen., James Patrick Barone, Nancy J. Joyer, Sp. Asst. Attys. Gen., St. Paul, for respondents.

Considered and decided by
FORSBERG, P.J., and KALITOWSKI
and MULALLY,* JJ.

## OPINION

### EDWARD D. MULALLY, Judge.

Relator Donald Prescott applied for unemployment compensation benefits, claiming he had good cause to quit his job due to harassment. Prescott also argued that his serious illness of depression caused his separation, and that he made reasonable efforts to retain his employment. The De-

* Acting as judge of the Court of Appeals by ap-

partment of Jobs and Training denied Prescott's claim for benefits, and we affirm.

## FACTS

Donald Prescott was employed by Moorhead State University as an assistant professor of education. Prescott voluntarily resigned his position with Moorhead and applied for unemployment compensation benefits, claiming his resignation was prompted by employment-related harassment.

A claims adjudicator with the Department of Jobs and Training determined that Prescott was disqualified from receiving unemployment benefits because he voluntarily resigned without good cause attributable to Moorhead. Prescott appealed to a Department referee, who conducted a hearing.

At the hearing, Prescott testified that he was harassed by a co-worker, Charlotte Iiams, on several occasions. Specifically, Prescott testified that in the late summer of 1988, Iiams assigned him to teach science classes, even though he was not qualified to teach in that area. Prescott also claimed that Iiams stood up at a department meeting and stated that Prescott would do whatever she wanted him to. Iiams chastized Prescott for little things, such as the way he pushed a VCR cart down the hall, erased the blackboard, and arranged chairs. Prescott also testified that without notifying him, Iiams changed the dates of an examination Prescott was giving his class.

Prescott testified that he spoke to the vice-president of Moorhead concerning the problem with the science assignment. Prescott also testified that before he quit, he spoke with his new department chair.

Prescott agreed to meet with Iiams and a counselor, but Iiams chose not to continue with the counseling. Prescott also met with the chairman of the grievance committee for the teachers' union. Although Prescott learned that he had the right to file a grievance, he did not do so because of

pointment pursuant to Minn. Const. art. VI, § 2.

the "hassle and constant conflict and friction with the advisor."

In addition to his oral testimony, Prescott submitted documentation that he suffered from depression while working for Moorhead.

Darrel Meinke, Moorhead's Dean of Instructional Services, testified that he was aware that the situation between Iiams and Prescott had created a conflict with a student; however, Meinke was not made aware that the conflict had continued. Meinke testified that Prescott did not take appropriate action by complaining to his department chair or to Meinke, who was acting dean at the time. In addition, Meinke testified that Prescott should have pursued his claim of harassment through Moorhead's affirmative action procedures.

Following the hearing, the referee determined that Prescott voluntarily resigned without good cause attributable to Moorhead and was therefore disqualified from receiving unemployment benefits. Prescott appealed to a Commissioner's representative, who affirmed.

Prescott has obtained a writ of certiorari, seeking review of the Commissioner's decision.

## ISSUES

1. Did the Commissioner err by determining that Prescott voluntarily resigned his position without good cause attributable to Moorhead?

2. Did the Commissioner err by determining that Prescott did not make reasonable efforts to retain his employment?

## ANALYSIS

### I.

■ An individual who "voluntarily and without good cause attributable to the employer discontinued employment with such employer" is disqualified from receiving unemployment compensation benefits. Minn.Stat. § 268.09, subd. 1(a) (Supp.1989). The evidence is undisputed that Prescott voluntarily discontinued his employment with Moorhead; therefore, he had the bur-

den of proving good cause to resign that was attributable to his employer. *Zepp v. Arthur Treacher Fish & Chips, Inc.,* 272 N.W.2d 262 (Minn.1978). The Commissioner's findings of fact are entitled to deference, and we will not reverse unless the findings are clearly erroneous. *White v. Metropolitan Medical Center,* 332 N.W.2d 25 (Minn.1983).

In *Larson v. Department of Economic Security,* 281 N.W.2d 667 (Minn.1979), the supreme court addressed the issue of on-the-job harassment in the context of an individual who had resigned and applied for unemployment compensation benefits. The *Larson* court stated:

> Under the circumstances presented, once relator was provided with the expectation of assistance from his employer in eliminating his alleged fear of harm from a co-worker, the burden was upon him to fully apprise the employer of the continuing facts giving rise to that fear. Without this full knowledge, it was reasonable for the employer to assume that the problem had been corrected.

*Id.* at 669.

■ Where supervisory personnel are involved in harassment, the Minnesota courts have imputed knowledge of the harassment to the employer. *See McNabb v. Cub Foods,* 352 N.W.2d 378 (Minn.1984); *Tru-Stone Corp. v. Gutzkow,* 400 N.W.2d 836 (Minn.App.1987). Here, the record supports the Commissioner's finding that Iiams was not Prescott's supervisor; therefore, Iiams' harassment should not be imputed to Moorhead.

■ Prescott argues he put Moorhead on notice of the harassment by complaining to the vice-president, his department chair, and his union, and by participating in Moorhead's conflict resolution procedures. Prescott concludes Moorhead failed to provide him with a reasonable expectation of assistance in eliminating the alleged harassment.

The record, however, supports the Commissioner's finding that Prescott failed to seek redress through appropriate channels. Meinke indicated that Prescott should have pursued affirmative action channels or in-

formed his department chair or Meinke of his continuing problems with Iiams. In addition, Prescott admitted that he failed to file a grievance, although he had the right to.

## II.

The legislature has provided an exception to disqualification from unemployment benefits where an employee is separated from employment "due to personal, serious illness provided that such individual has made reasonable efforts to retain employment." Minn.Stat. § 268.09, subd. 1(c) (Supp.1989). As the Commissioner's representative found, there is ample undisputed evidence in the record that Prescott suffered from serious depression. However, the Commissioner's representative also found that Prescott failed to take appropriate steps to apprise Moorhead of his problems prior to resigning. Since Prescott did not make "reasonable efforts to retain employment," the representative concluded the serious illness exception was not applicable. We defer to this determination, which is supported by the record. We also note some question whether Prescott's separation was "due to" his illness or the alleged harassment.

## DECISION

The record supports the Commissioner's determination that Prescott failed to take appropriate and reasonable steps to apprise Moorhead of the alleged harassment and/or his illness of depression. Prescott voluntarily separated from employment without good cause attributable to Moorhead and is disqualified from receiving unemployment compensation benefits.

Affirmed.