OPINION
PARKER, Judge.
Peksa was involuntarily discharged by Fairview Southdale Hospital on May 21, 1993, due to absenteeism caused by his alcoholism. Peksa argued before the unemployment insurance referee that he had made reasonable and consistent efforts to retain his employment. The referee found that his absences from work were due to his alcoholism and that he had made reasonable efforts to retain sobriety, thus concluding that Pek-sa’s absences did not constitute disqualifying misconduct. The Commissioner’s representative reversed the decision of the referee, and Peksa appeals. We reverse.
FACTS
Thomas Peksa was diagnosed as an alcoholic 14 years ago. At that time, he was advised to attend Alcoholics Anonymous (AA) meetings. He has often had difficulty maintaining sobriety and has been treated for chemical dependency at least ten times. In recent years, he has been generally sober but has experienced relapses lasting about six or seven days on each occasion. For the past five or six years, Peksa has been a regular participant in AA. He is currently finishing his undergraduate studies and hopes to attend law school.
Peksa was employed by Fairview-South-dale Hospital as an X-ray technician from January 1991 until May 21, 1993. In August of 1992 Peksa missed five days of work because of his drinking. He then entered a chemical dependency treatment program. *915 When he completed the program, he was advised by Fairview-Southdale that if he missed work again because of drinking, he would be discharged. The hospital attempted to have Peksa sign a statement agreeing to these terms, but he declined.
Peksa attended AA meetings two or three times per week from August of 1992 until April of 1993, when he experienced a relapse, began drinking, and missed three days of work. He did not attend AA meetings during his relapse but has since resumed attendance.
Peksa called Fairview-Southdale on the days of his absence and explained that he was ill. On the third day, he notified his supervisor that he was going into a primary care treatment program. Peksa’s attending counselor in the program determined that Peksa had the desire to stop drinking but that, given his treatment history, primary care could not offer the treatment necessary to address his condition.
After Peksa had exhausted his savings of $2,000, and after it was confirmed that his insurance would not cover further treatment in primary care, he was discharged from the program.
Peksa’s counselor then determined that he needed an extended intensive treatment program. The counselor recommended a four-month program costing $5,000 per month. Peksa discovered that his insurance would not pay for the program and concluded that his savings were exhausted and he could not pay the cost. The counselor then recommended a program run by Catholic Charities. This was a no-cost intensive program requiring participants to live on-site and perform work in a soup kitchen for a full year.” The program would not allow Peksa to work off-site or pursue his studies for the duration of the program. Peksa visited the program but concluded he could not participate because he could not afford to spend a year without working. The counselor then informed Fair-view-Southdale that Peksa had left treatment without completing the recommended program. Fairview-Southdale thereafter discharged Peksa, after which Peksa filed for unemployment compensation.
The unemployment referee awarded Peksa benefits, concluding that, although he had committed misconduct by missing work due to drinking, his failure to complete a treatment program for his illness was due to lack of funds, not a lack of effort. The referee did not address the Catholic Charities treatment option.
The Commissioner’s representative agreed with the referee that Peksa’s missing work due to drinking amounted to misconduct. The Commissioner’s representative disagreed, however, with the referee’s conclusion that Peksa had made reasonable efforts to retain his employment. The Commissioner’s representative held that Peksa disqualified himself from receiving unemployment compensation by refusing to pursue the Catholic Charities program after having claimed an inability to pay for the alternative program. The Commissioner’s representative concluded that Peksa’s decision not to pursue the Catholic Charities, program showed that he had not made consistent efforts to maintain the treatment he had been professionally advised was necessary to control his illness.
ISSUES
I. Was Peksa fired because of misconduct?
II. Did Peksa make reasonable efforts to retain his employment?
DISCUSSION

Standard of Review

The narrow standard of review in unemployment compensation cases requires that the findings be viewed in the light most favorable to the decision, and if there is evidence reasonably tending to sustain them, they will not be disturbed. White v. Metropolitan Med. Ctr., 332 N.W.2d 25, 26 (Minn.1983). While the court must defer to the Commissioner’s findings of fact if they are reasonably supported by the evidence in the record, the court may exercise its independent judgment with respect to questions of law. Smith v. Employers’ Overload Co., 314 N.W.2d 220, 221 (Minn.1981); Forsberg v. Depth of Field/Fabrics, 347 N.W.2d 284, 286 (Minn.App.1984).
*916 I
An individual separated from any employment for misconduct shall be disqualified for waiting week credit and benefits. Minn.Stat. § 268.09, subd. 1 (1992). The employer in an unemployment compensation case has the burden of proving that an individual is disqualified from receiving unemployment compensation under the provisions of Minn.Stat. § 268.09, subd. 1. Marz v. Department of Employment Services, 256 N.W.2d 287, 289 (Minn.1977).
The intended meaning of the term “misconduct” is limited to conduct evincing such wilful or wanton disregard of an employer’s interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such a degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer’s interests or of the employee’s duties and obligations to his employer. On the other hand, mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed misconduct.
Tilseth v. Midwest Lumber Co., 295 Minn. 372, 374-75, 204 N.W.2d 644, 646 (1973). Whether the individual’s conduct constitutes misconduct is a question of law upon which this court is free to exercise its independent judgment. Dean v. Allied Aviation Fueling Co., 381 N.W.2d 80, 83 (Minn.App.1986).
The supreme court has recognized a legislative intent in the Jobs and Training law to include as misconduct behavior which results from illness. Moeller v. Minnesota Dept. of Transp., 281 N.W.2d 879, 882 (Minn.1979). Accordingly, in Moeller, despite the court’s recognition of alcoholism as a chronic disease subjecting its sufferers to remissions and exacerbations, the court held that failure to report to work or to notify an employer is misconduct even though the employee has the disease of addiction to alcohol. Id.
The record in this case shows that Peksa was absent from work because he had suffered a relapse in his alcoholism. The hospital had made representations that it would discharge Peksa if he were absent for such a reason. Since absenteeism, even for illness, constitutes misconduct, Peksa committed misconduct.
One exception to disqualification for misconduct is when an individual is separated from employment due to personal, serious illness, provided that such individual has made reasonable efforts to retain employment. Minn.Stat. § 268.09, subd. 1(c)(2) (1992).
Fairview-Southdale contends, however, that Peksa cannot satisfy the requirements of the “serious illness” exception, because he was discharged for absenteeism, not alcoholism. The hospital claims that Peksa’s absenteeism was not “due to” chemical dependency, citing Kemp v. United States Department of Agriculture, 385 N.W.2d 879 (Minn.App.1986). Kemp is distinguishable, however, since there the Commissioner did not find that the employee was discharged due to his chemical dependency, whereas here the Commissioner’s representative made such a finding. Independent Sch. Dist. No. 709 v. Hansen, 412 N.W.2d 820, 324 (Minn.App.1987); see also Umlauf v. Gresen Mfg., 393 N.W.2d 198, 200 (Minn.App.1986) (distinguishing Kemp because the employer knew nothing about the claimant’s alcoholism). Fairview-Southdale’s contention is likewise not supported by the record, which indicates Peksa was told that further chemical dependency problems would result in termination. In response to a Minnesota Department of Jobs and Training questionnaire, the hospital asserted that the final incident that caused Peksa’s discharge “was when the claimant began drinking again and went into treatment.” The same questionnaire contains the statement that “[Peksa’s] failure to maintain his sobriety can be seen as misconduct” and “In May, when he again experienced drinking problems, he was terminated effective 5/21/93.”
The record supports the Commissioner’s finding that Peksa was discharged for absen *917 teeism due to his alcoholism, which would constitute misconduct.
II
This does not end the inquiry, however, for purposes of disqualification from benefits. Under the “serious illness” exception to disqualification, a claimant may show he has made reasonable efforts to retain his employment. “Reasonable efforts” takes on a specific meaning in the context of chemical dependency:
An individual who is separated from employment due to the individual’s illness of chemical dependency which has been professionally diagnosed or for which the individual has voluntarily submitted to treatment and who fails to make consistent efforts to maintain the treatment the individual knows or has been professionally advised is necessary to control that illness has not made reasonable efforts to retain employment.
Minn.Stat. § 268.09, subd. 1(c)(2) (1992).
This language codified the import of the Moeller case, holding that one suffering from a chemical dependency need not maintain total abstinence from chemicals or achieve total success in treatment to make reasonable efforts to retain his employment. Leslin v. County of Hennepin, 847 N.W.2d 277, 279 (Minn.1984).
In determining what is a reasonable effort to retain employment, “the findings of the Commissioner must be reviewed in the light most favorable to the decision and are not to be disturbed if there is evidence reasonably tending to support them.” Hirt v. Lakeland Bakeries, 348 N.W.2d 400, 401-02 (Minn.App.1984).
Peksa argues that he has made reasonable efforts to retain his employment by undergoing chemical dependency treatment approximately ten times and by frequently attending AA meetings. Peksa refused to participate in the two programs suggested by his chemical dependency counselor because of his lack of funds. The Commissioner’s primary objection to Peksa’s refusal was that Peksa “does not suggest any other available alternative.”
In Moeller, the supreme court asserted that the statute requires only that the employee make a reasonable effort to retain his employment. Moeller, 281 N.W.2d at 882. “In determining what is a reasonable effort to retain employment, the Commissioner must determine what is reasonable for the particular employee under the circumstances of that case.” Id. “The focus is upon an individual’s efforts, not his results.” Umlauf, 393 N.W.2d at 200. One relevant question in the case of an alcoholic claimant is whether the employee had the ability to refrain from drinking. The claimant in Moeller was awarded unemployment compensation benefits by the supreme court because “[a] review of his entire record indicates that he was very concerned about retaining his job and made a reasonable effort to do so by attempting to control his addiction to alcohol.” Moeller, 281 N.W.2d at 882.
Evidence in the record here suggests that Peksa could not refrain from drinking. In a June 9, 1993, letter to the Department of Jobs and Training, Peksa wrote:
My picking up that first drink in the last week of April leads me to believe that at some point an alcoholic has no defense against the mental obsession to use alcohol. I had no intentions of drinking that morning when I awoke. I had no intentions of sabotaging my life.
The record indicates that Peksa notified his supervisor that he was ill because he had begun drinking again and that he intended to enter a recovery program. The record also indicates that Peksa was concerned about his job:
I did not at anytime with my employment at Fairview Southdale act unprofessionally or without caring. If Fairview Southdale offered my position back to me, I would seize the opportunity.
Peksa further indicated that he refrained from asking personnel officials whether they could arrange for insurance coverage for treatment, since they had warned him Fair-view-Southdale would terminate his employment if his chemical dependency resurfaced.
*918 The. question becomes, then, whether Pek-sa failed to make reasonable efforts, as defined by the statute, in declining to pursue the Catholic Charities program recommended to him by his drug treatment counselor. Fairview-Southdale’s position is that it gives employees every opportunity to get help and to recover. After an employee is several times in treatment but is unwilling to stay in treatment, the hospital feels it must take action to discharge the employee.
In this case, Peksa made many efforts to remain in treatment. He readily entered the primary treatment program, expending $2,000 in the process. His money exhausted, Peksa could not enter the four-month, $20,-000 intensive program suggested by the treatment counselor. He then went personally to Catholic Charities to learn more about its program. Peksa has participated regularly in AA for many years. The evidence fails to support the conclusion that he did not make consistent efforts to stay in treatment.
The evidence indicates that Peksa has demonstrated consistent efforts to address his alcoholism. He clearly is aware of the gravity of his problem and his need for treatment. Faced with two economically unreasonable treatment options, Peksa’s rejection of both cannot translate automatically into a finding that he has not made consistent efforts to maintain treatment. Further, had Peksa chosen to attend the Catholic Charities program, he would still be ineligible for unemployment benefits, since he would be unable to comply with the availability-for-work requirement of the statute. See Minn. Stat. § 268.08, subd. 1(3) (1992) (to be eligible to receive benefits, person must be available for work and actively seeking work); see also Hansen v. Continental Can Co., 301 Minn. 185, 187, 221 N.W.2d 670, 672 (1977) (those who are involuntarily unemployed must actively seek employment and not place conditions or restrictions on their availability and must be a genuine part of the labor force in order to receive unemployment compensation benefits). To be ineligible for benefits no matter what choice he makes is a dilemma which frustrates the remedial purpose of the Jobs and Training law. See Minn.Stat. § 268.03 (unemployment reserves are to be used for the benefit of persons unemployed through no fault of their own); see also Hendrickson v. Northfield Cleaners, 295 N.W.2d 384, 385 (Minn.1980) (to effectuate public policy, unemployment compensation statute must be liberally construed and its disqualification provisions narrowly construed).
The record is devoid of evidence showing the reasonableness of the Catholic Charities program for this claimant or why the chemical dependency counselor did not suggest any others. The Commissioner has concluded that Peksa’s refusal to pursue the program shows lack of consistent efforts to maintain his employment. The record in this case does not support this conclusion.
DECISION
Relator was discharged due to his chemical dependency. The record shows he made consistent efforts to remain in treatment, despite his rejection of two programs proposed to him by the chemical dependency professional. Relator is thus not disqualified from receiving unemployment compensation benefits.
Reversed.