Michael A. KALBERG, Relator,

v.

PARK & RECREATION BOARD OF
MINNEAPOLIS, Respondent,

Commissioner of Economic
Security, Respondent.

No. C4–96–2316.

Court of Appeals of Minnesota.

June 3, 1997.

James A. Reichert, Minneapolis, for Rela-
tor.

Kent E. Todd, Minnesota Department of
Economic Security, St. Paul, for Respondent.

Park & Recreation Board of Minneapolis
c/o Employer's Unity, Inc., Westminster, CO,
pro se Respondent.

Considered and decided by PETERSON,
P.J., and LANSING and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Finding that relator was separated from employment due to his chemical dependency and that he made reasonable efforts to retain his job, a reemployment insurance judge overturned an initial determination of the Department of Economic Security to disqualify relator from reemployment insurance benefits. After the employer's further appeal, a Commissioner's representative reversed the judge's decision, stating that the serious illness exception to discharge for misconduct did not apply where the employee had failed to report to his employer that his misconduct, absenteeism, was caused by his relapse into chemical dependency. Because the representative's decision is unjustified on the facts and under the law, we reverse.

## FACTS

Relator worked as an equipment operator for respondent Park & Recreation Board of Minneapolis for nearly twenty years until he was discharged for misconduct in May 1996. He had a history of cocaine addiction and resulting absences from work. Prior to 1996, relator's last chemical dependency relapse occurred in 1995, when he completed in-patient treatment for his addiction and a 12–week aftercare program. He agreed at the time that his resignation would be processed if there were any further instances of substandard performance of misconduct. After that time relator completed another in-patient treatment program and continued to attend a therapy group.

At least twice in April 1996 and again on May 14, relator was absent from work, and he explained his absences as sickness. On May 14, he told his employer that he did not anticipate being able to work the next day. On May 15, relator called in sick at 7:35 a.m., 35 minutes after the time required by the Park Board's personnel policy.

Relator was discharged as a result of his late call on May 15 and his failure to give the Park Board a legitimate medical excuse for one of the earlier absences.

At a hearing before the reemployment judge, relator offered undisputed testimony that his April and May absences were due to his relapse into chemical dependency, and that he had entered into another treatment program. The judge found that relator was separated from work due to chemical dependency and that he made reasonable efforts to retain employment by maintaining his treatment for cocaine addiction. See Minn.Stat. § 268.09, subd. 1(c)(2) (1996) (prohibiting disqualification for misconduct where claimant is discharged due to serious illness, provided that the claimant made reasonable efforts to retain employment and adding that chemically dependent person does not make reasonable efforts in the absence of consistent efforts to maintain needed treatment).

A Commissioner's representative disqualified relator for missing work and being late in reporting an absence, explaining that relator failed to report to his supervisor that he was suffering from a chemical dependency relapse. The representative found that "the employer was not aware that the claimant was absent due to chemical dependency" and observed that the employee's truthful report was necessary "to allow the employer an opportunity to consider that situation."

## ISSUE

Was relator entitled to benefits because of the serious illness exception to disqualification for misconduct?

## ANALYSIS

■ This court reviews the decision of the Commissioner's representative rather than that of the reemployment insurance judge. *Weaver v. Minnesota Valley Labs., Inc.*, 470 N.W.2d 131, 133 (Minn.App.1991). We will not disturb the Commissioner's findings "if there is evidence reasonably tending to sustain them." *White v. Metropolitan Med. Ctr.*, 332 N.W.2d 25, 26 (Minn.1983). But the ultimate issue of disqualification is a question of law that we review de novo. *Ress v. Abbott Northwestern Hosp., Inc.*, 448 N.W.2d 519, 523 (Minn.1989).

1.

■ Under Minn.Stat. § 268.09, subd. 1 (1996), an employee is disqualified from

reemployment benefits for either voluntarily leaving employment without good cause attributable to the employer under subsection (a) or being discharged for misconduct under subsection (b). Neither provision may be applied if the loss of employment is due to the employee's "serious illness," including chemical dependency, "provided that the [employee] made reasonable efforts to retain employment." Minn.Stat. § 268.09, subd. 1(c)(2). A chemically ill employee "has not made reasonable efforts to retain employment" if the employee fails to make "consistent efforts to maintain" needed treatment. *Id.*

It is undisputed that the relator is addicted to cocaine, that his addiction was the reason for his absenteeism in May 1996, and that he voluntarily has submitted to treatment for his illness and has made consistent efforts to maintain his treatment. We observe that the governing statute mandates reasonable efforts of a seriously ill employee to retain his employment and that the statute defines these reasonable efforts only as it declares that they do not occur when needed treatment is neglected. We note that there is no claim advanced in this case that relator, having made consistent efforts to maintain his treatment, failed to make the required reasonable efforts because of his repeated relapses. *See Leslin v. County of Hennepin,* 347 N.W.2d 277, 279 (Minn.1984) (observing that the "consistent efforts" clause, added to the serious illness provision in 1980, "codified the import of *Moeller*" and declaring that the clause "requires the Commissioner to evaluate the claimant's efforts, not the result."); *Moeller v. Minnesota Dep't of Transp.,* 281 N.W.2d 879, 882 (Minn.1979) (holding that it is unreasonable to require total abstinence of an alcoholic person, even after treatment and observing that alcoholism is a "chronic illness characterized by remissions and exacerbations").

Prior to the time of oral argument to this court, the Commissioner offered a single explanation for the conclusion that relator could not claim the benefits of the chemical dependency exception. Citing *Prescott v. Moorhead State Univ.,* 457 N.W.2d 270, 273 (Minn. App.1990), the Commissioner's representa-

tive asserted that relator's failure to take appropriate steps to apprise his employer of the reason for his absence precludes an award of reemployment insurance benefits. In briefing on appeal, the Commissioner similarly argued that relator was disqualified because he did not inform his employer of the true reason for his absence.

In *Prescott,* the court found that the serious illness exception did not apply when an employer had no knowledge of an employee's illness of depression prior to the employee's resignation. *Id.* As the representative explained in his decision in the present case, this sort of notice is important so the employer can deal with the employee's illness. But this reasoning has no application to the facts of this case. Relator's supervisor had worked with him for many years and knew his history of absenteeism related to his chemical dependency. The supervisor testified that he viewed relator's sicknesses suspiciously because relator had a history of feigning sickness to conceal his relapses into chemical dependency. Nothing in the record permits a factual finding that the employer thought relator's absence in May was for a reason other than chemical dependency.

**2.**

At oral argument, counsel for the Commissioner added an additional explanation for the representative's decision, asking for our careful examination of the statutory language regarding the serious illness exception. The statute provides an exclusion favoring the claimant separated from employment "due to" the claimant's illness. Minn. Stat. § 268.09, subd. 1(c)(2). The Commissioner contends that relator was separated from employment due to misconduct, not chemical dependency, and is thus disqualified from benefits. A proper construction of the disqualification provision precludes this argument.

Subdivision 1(c)(2) provides for "exceptions to disqualification" and states that an individual will not be disqualified under subdivisions 1(a) (voluntary quits) or 1(b) (misconduct discharges) when, inter alia, the employee was separated from employment due to the employee's illness. Expressly, the language of paragraph (c) is an exception to the miscon-

278

duct disqualification provision found in subsections (a) and (b). We find it evident that subsection (c) provides for those instances when an employee's loss of employment is due to misconduct, but the misconduct discharge is due to the claimant's chemical dependency or other serious illness. *See Moeller*, 281 N.W.2d at 881–82 (affirming finding that "absenteeism due to alcoholism" constituted misconduct but stating that "misconduct due to serious illness" is not disqualifying).

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (1996). In construing a statute, we look to the statute as a whole and give effect to all of its provisions. *See Kachman v. Blosberg*, 251 Minn. 224, 229, 87 N.W.2d 687, 692 (1958) (stating statutory provision "cannot be read out of context but must be taken together with other related provisions to determine its meaning"). We interpret statutory provisions in light of each other and presume that the legislature understood the effect of the statutory language. *Van Asperen v. Darling Olds, Inc.*, 254 Minn. 62, 74, 93 N.W.2d 690, 698 (1958). Subsections (a) and (b) must be read in conjunction with subsection (c). To construe paragraph (c) as though it stood alone would thwart the intention of the legislature, effectively writing the exception out of the statute. Moreover, this reading of the chemical dependency exception would produce the absurd result of limiting its application only to employees discharged solely because they were known to be chemically dependent. *See* Minn.Stat. § 645.17(1) (1996) (stating that statutes cannot be construed to produce an absurd result); *Park Towers Ltd. Partnership v. County of Hennepin*, 498 N.W.2d 450, 454 (Minn.1993) (rejecting statutory construction that would yield absurd results).

In *Kemp v. United States Dep't of Agric.*, 385 N.W.2d 879, 883 (Minn.App.1986), affirming a finding that the employee failed to participate in chemical dependency treatment, we added the observation that the employee's discharge was not for chemical dependency but for misconduct. Insofar as

*Kemp* is read in conflict with our current holding, *Kemp* should be disregarded.

We reverse the Commissioner's decision and remand for a determination of relator's reemployment insurance benefits.

**Reversed and remanded.**