16492

STONE MFG. CO. v. SOUTH CAROLINA EMPLOYMENT SECURITY COMMISSION ET AL.

(64 S. E. (2d) 644)

240

*Messrs. Jas. Julien Bush* and *Robert G. Horine,* of Colum-
bia, *for Appellant, S. C. Employment Security Commission.*

*Mr. John S. Nicholson,* of Columbia, *for Respondent,*

242

April 11, 1951.

OXNER, Justice.

The question presented is: If a wife quits her employ-ment for the sole purpose of being with her husband, a

regular member of the Armed Forces, who had been transferred from Fort Jackson, South Carolina, to Fort Bragg, North Carolina, does she leave her employment "voluntarily without good cause", within the contemplation of Section 5(a) of the South Carolina Unemployment Compensation Law Section 7035-85(a), Code of 1942? The South Carolina Employment Security Commission, one member dissenting, answered this question in the negative but the Circuit Court, on application by the employer for review, reached a different conclusion.

The undisputed facts are: Claimant's husband was stationed at Fort Jackson for approximately two years. During the greater portion of this period, claimant was employed by the Stone Manufacturing Company at Columbia, South Carolina, which is only a few miles from Fort Jackson. On June 1, 1950, her husband was transferred from Fort Jackson to Fort Bragg, which is located about ten miles from Fayetteville, North Carolina. On May 29, 1950, she discontinued working for the Stone Manufacturing Company in order to live with her husband. The couple secured a room in the area of Fort Bragg and claimant registered for work at Fayetteville. She immediately secured employment but after working for two days, quit this job because her employer followed a policy of not issuing a pay check to new employees until the end of the first month. Being unable to obtain other employment around Fayetteville, on June 5th she filed claim for unemployment compensation benefits. On August 1, 1950, her husband was sent overseas. A few days later she returned to Columbia and was again offered employment by the Stone Manufacturing Company but was unable to accept same on account of the necessity of hospital treatment.

The answer to the question before us depends upon the proper construction of the phrase "without good cause" appearing in Section 7035-85(a) of the 1942 Code, which provides that an individual shall be ineligible for benefits "For the week in which he has left his most recent work voluntarily without good cause, if so found by the commis-

sion, and for not less than one or more than five weeks of disqualification (in addition to the waiting period), as determined by the commission according to the circumstances in each case  *  *  *."

The conclusion of the majority of the Commission that claimant was eligible for unemployment compensation benefits without any disqualification is based on the premise that the phrase "good cause" within the purview of the foregoing section includes causes personal to claimant as well as those connected with the work. It is argued that the Unemployment Compensation Law is remedial in nature and should be liberally construed to give effect to its beneficent purposes, and that if a worker leaves his employment to discharge a legal duty or because of compelling family obligations, his leaving is with good cause. On the basis of this reasoning, it is claimed that it was the duty of claimant to accompany her husband to Fort Bragg and live with him while he was stationed there and that when she left her employment at Columbia for this purpose, she did so with "good cause". In other words, it is the view of the Commission that a "good cause" may arise from purely personal factors, wholly disconnected with the employment.

It is the contention of the employer, whose interest in this appeal arises under the merit rating feature of the law, that only persons who are involuntarily unemployed because of the failure of industry to provide employment are entitled to benefit payments, and that the "good cause" contemplated by the section under consideration is one having some connection with, or relation to, claimant's employment or employer. Under this suggested construction, it is asserted that claimant left her work voluntarily without good cause because she did so of her own volition and for reasons wholly unrelated to her employment.

The dominant intent of the statute under consideration can best be ascertained from Section 7035-82 of the 1942 Code, which is as follows: "Without intending that this sec-

tion shall supersede, alter, or modify the specific provisions hereinafter contained in this article but as a guide to the interpretation and application of this article, the public policy of this State is declared to be as follows: economic insecurity due to unemployment is a serious menace to health, morals and welfare of the people of this State. Unvoluntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the General Assembly to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging the employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The General Assembly, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this State require the enactment of this measure, under the police powers of the State, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."

While the foregoing general declarations are subject to any words of particular or restricted import subsequently appearing in the statute, *Johnson v. Pratt,* 200 S. C. 315, 20 S. E. (2d) 865, it has been held that the subsequent provisions as to eligibility or ineligibility for compensation must all be read and construed as subject to the basic and fundamental declaration set out in the foregoing section. *Barclay-White Co. v. Unemployment Compensation Board of Review,* 356 Pa. 43, 50 A. (2d) 336.

The precise question involved on this appeal has never been presented to this Court. However, we had occasion in *Mills v. South Carolina Unemployment Compensation Commission,* 204 S. C. 37, 28 S. E. (2d)

535, to pass upon a related feature of the act. In that case the claimant was employed on the third shift at Judson Mills. She had four children who were cared for by a relative while she was working. This relative left and being unable to secure anyone else to take care of the children, she was compelled to give up her work and remain at home. It appeared that she could arrange to work on either the first or second shift but her employer was only able to offer employment on the third shift. The question involved was whether claimant was "available for work" within the purview of Section 7035-84(c). The Commission held that plaintiff voluntarily quit for good cause and was available for work because she could accept employment on either the first or the second shift. The decision of the Commission was reversed and the Court held that claimant was not "available for work" within the contemplation of the act. In reaching this conclusion, the Court stated that the term "involuntary unemployment" as used in the declaration of policy "had reference to unemployment resulting from a failure of industry to provide stable employment", and that the statute was not intended "to provide benefits for a worker compelled to give up his job solely because of a change in his personal circumstances." [204 S. C. 37, 28 S. E. (2d) 536.] While this case is not controlling, it is helpful in that it sets forth the basic and fundamental purpose of the Act and the evil sought to be remedied.

The courts elsewhere generally recognize that the statute was enacted " 'for the benefit of persons unemployed through no fault of their own.' " *Sun Shipbuilding & Dry Dock Co. v. Unemployment Compensation Board of Review*, 358 Pa. 224, 56 A. (2d) 254, 259. And it has been held that the word "fault" as used in the declaration of policy is not limited to something that is blameworthy, culpable of wrong. *Moulton v. Iowa Employment Security Commission*, 239 Iowa 1161, 34 N. W. (2d) 211. In *Walter Bledsoe Coal Co. v. Review Board of Employment Security Division*, 221 Ind. 16, 46 N. E. (2d) 477, 479, the court said: "Appellees say

that the word 'fault' means 'something worthy of censure.' We cannot believe that the word as used in the statute was intended to have such a meaning. * * * Thus 'fault' must be construed as meaning failure or volition."

We are in accord with the view of the Circuit Court that claimant left her employment "voluntarily without good cause." We think the words "good cause" as used in the context contemplate, ordinarily at least, a cause attributable to or connected with claimant's employment. Assuming, without deciding, that there may be reasons personal to the employee in exceptional cases sufficient to constitute a good cause, we do not think that it is a good cause within the purview of the Act for a wife to quit her employment for the purpose of accompanying and being with her husband. One can readily understand and appreciate the reason for such action and it is certainly not to be condemned, but as held in *Sun Shipbuilding & Dry Dock Co. v. Unemployment Compensation Board of Review, supra,* "a laudable motive for leaving employment and a 'good cause' within the meaning of the Act are entirely different things." It is true that it is the duty of a wife, if conditions permit, to live with her husband, who has the right to select the marriage domicile, but the Unemployment Compensation Law, Code 1942, § 7035-81 *et seq.* does not relieve the husband from his duty to support his wife. Claimant's separation from her employment did not result from a failure of industry to provide stable employment. She voluntarily chose between continuing her employment and living with her husband. Even though the choice so made by her may not be termed a "fault", yet it was one made of her own volition. While the statute under consideration is to be liberally construed in order to effect its beneficent purpose, we are not at liberty to adopt a construction which is wholly beyond the limits of the plain legislative intent.

We find very few decisions from other jurisdictions touching the precise question before us. The conclusion we have reached is sustained by the following cases: *Woodmen*

of the World Life Insurance Society v. Olsen, 141 Neb. 776, 4 N. W. (2d) 923; John Morrell & Co. v. Unemployment Commission, 69 S. Dak. 618, 13 N. W. (2d) 498. Also, see Moulton v. Iowa Employment Security Commission, supra, 239 Iowa 1161, 34 N. W. (2d) 211; 48 Am. Jur., page 539. It appears that the Superior Court of Pennsylvania has adopted a different view. Department of Labor and Industry of Pa. v. Unemployment Compensation Board of Review, 154 Pa. Super. 250, 35 A. (2d) 739; Bliley Electric Co. v. Unemployment Compensation Board of Review, 158 Pa. Super. 548, 45 A. (2d) 898. It is upon these two cases that the Commission principally relies. But it is doubtful whether they will be followed by the highest Court of that State. In commenting on these two decisions, the Supreme Court of Pennsylvania in Sun Shipbuilding & Dry Dock Co. v. Unemployment Compensation Board of Review, supra, 358 Pa. 224, 56 A. (2d) 254, said: "To hold that a married woman who quits her job to join her husband in a new domicile is voluntarily becoming 'unemployed' for a 'good cause' within the meaning of the Act is to open the door to so much fraud on employers that one may doubt that such a construction of the Unemployment Compensation Act conforms to the cannon that 'all laws should receive a sensible construction.' Per Field, J., in United States v. Kirby, [7] Wall. 482, 486, 19 L. Ed. 278, cited with approval in Watson v. Witkin, 343 Pa. 1, 6, 22 A. (2d) 17. In this last cited case we quoted with approval what Judge Cardozo said in Re Rouss, 221 N. Y. 81, 116 N. E. 782, as follows (343 Pa. 1, 22 A. (2d) 23): 'Statutes must be so construed, if possible, that absurdity and mischief may be avoided.' If a woman can quit her job in order to follow her husband into another domicile where work for her will not be available, and then become entitled to the benefits of this Compensation Act, and if a workman can quit his job to go into private business and then when that business fails he can still reap the benefits of this Compensation Act, the latter will in many instances be used as a 'short cut' to a temporary pension."

It appears that a number of states have amended their statutes by adding after the phrase "voluntarily without good cause", the words "attributable to the employer" or, "connected with the work", or other words of similar import. It is argued that this is a legislative recognition that the phrase, "voluntarily without good cause", as appearing in the original acts, included any good cause of a personal nature even though not connected with the claimant's employment. But it does not necessarily follow that these amendments were intended to make some change in the existing law. As stated in *John Morrell & Co. v. Unemployment Compensation Commission, supra,* "A change in a statute may be made to express more clearly the original intention of the legislature." [69 S. D. 618, 13 N. W. (2d) 500.] In support of the rule of statutory construction just stated, see 50 Am. Jur., Statutes, Section 337, page 328.

It is also argued that the Commission has consistently interpreted the phrase "good cause" as including compelling personal reasons for quitting an employment, and that the General Assembly, presumably familiar with this interpretation, has not seen fit to amend the statute. While the construction of a statute by the officials charged with its administration, which has been acquiesced in by the Legislature for a long period of time, should be given great weight. *Etiwan Fertilizer Co. v. S. C. Tax Commission,* 217 S. C. 354, 60 S. E. (2d) 682, the final responsibility for the interpretation of the law rests with the courts. "At most, administrative practice is a weight in the scale, to be considered, but not to be inevitably followed. * * * While we are of course bound to weigh seriously such rulings, they are never conclusive." *F. W. Woolworth Co. v. United States,* 2 Cir., 91 F. (2d) 973, 976. Also, see *Whitcomb Hotel, Inc., v. California Employment Commission,* 24 Cal. (2d) 753, 151 P. (2d) 233, 155 A. L. R. 405.

All exceptions are overruled and the order appealed from affirmed.

FISHBURNE, STUKES and TAYLOR, JJ., and E. H. HEN-
DERSON, Acting Associate Justice, concur.