[Civ. No. 28106. Fourth Dist., Div. One. Feb. 22, 1984.]

CERBERONICS, INC., Plaintiff and Appellant, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Respondent.

COUNSEL

Mitchell, Silberberg & Knupp, Stuart Linnick and Lawrence A. Ginsberg for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Thomas E. Warriner, Assistant Attorney General, Anne S. Pressman and Henry Torres, Jr., Deputy Attorneys General, for Defendant and Respondent.

OPINION

**COLOGNE, J.**—Cerberonics, Inc., as an employer, appeals a judgment of the superior court confirming the order of California Unemployment Insurance Appeals Board charging its reserve for unemployment benefits paid its discharged employee, Mary A. LeCompte. The facts are not in dispute.

LeCompte was employed by Cerberonics as a technical typist from August 1978, until her termination on August 21, 1979. Cerberonics was the successful bidder for a government contract which provided technical services especially in the nature of typing of technical reports. In the summer of 1979, the contract was up for renewal and Cerberonics was actively bidding for a renewal of the contract for followup work.

The bidding on this contract was price competitive but a major criterion for judging the successful bidder was its ability to perform. As a part of the bid, the government required the bidders to provide resumes of the personnel who would be doing the work.

As the incumbent contractor, Cerberonics felt it had the advantage of experienced personnel and wanted to maintain the advantage. If its competitors were able to represent they would be using the same personnel as Cerberonics, it would lose that advantage. Cerberonics therefore notified certain key personnel that it would be using their resumes and required these employees to sign a statement saying such use was permissible and the employee would not let his or her resume be used by anyone else seeking

this government contract.[1] Cerberonics would not promise continued employment to LeCompte in return for signing the statement.

LeCompte consulted an attorney and then refused to give Cerberonics the exclusive right to use her resume though she permitted Cerberonics to use the resume for its own bid. She refused to sign the statement and was fired.

It is uncontested this exclusive right to use her resume was not a part of LeCompte's original conditions of employment.

LeCompte contends it is unfair to deny her the opportunity to seek employment; Cerberonics contends LeCompte owes her employer the loyalty not to aid a competitor to obtain business which it also sought.

LeCompte claimed unemployment benefits. The California Employment Development Department (EDD) decided she was eligible to receive the benefits because she was discharged by Cerberonics under circumstances not constituting misconduct as defined in Unemployment Insurance Code section 1256. That determination was upheld after a hearing before an administrative law judge and Cerberonics appealed to the California Unemployment Insurance Appeals Board. The board ruled the claimant was not disqualified from unemployment compensation benefits and Cerberonics was subject to benefit charges to its reserve account. The employer then petitioned the superior court for a writ of mandate (Code Civ. Proc., § 1094.5) and, after hearing, the court denied the writ, providing findings of fact and conclusions of law.

The standard of review for the superior court is it must exercise its independent judgment on the evidence and inquire whether the administrative agencies' findings are supported by the weight of the evidence (Code Civ. Proc., § 1094.5, subds. (b) and (c); *Lacy* v. *California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1132 [95 Cal.Rptr. 566]). Except where relevant evidence has been improperly excluded at the administrative hearing or could not be produced by the exercise of reasonable diligence, the superior court's independent review focuses on the eviden-

---

[1]The exact language of the statement was as follows: "I consent to the use of my resume (and other personnel data) in Cerberonics, Inc., proposal _____, in response to solicitation number _____. Additionally, no other organization has been, or shall be, granted authority to use my resume in connection with the above solicitation."

The blanks were filled in so it applied only to this one, "Nav-Sea," contract with the government.

tiary record made at the administrative level (Code Civ. Proc., § 1094.5, subds. (a) and (e)).

■ On appeal, after the superior court has applied its independent judgment to the evidence, all conflicts must be resolved in favor of the respondent and all reasonable inferences made to uphold the court's finding (*Yakov v. Board of Medical Examiners* (1968) 68 Cal.2d 67, 72 [64 Cal.Rptr. 785, 435 P.2d 553]). The scope of appellate review may differ, however, where the facts are not in dispute and the issue becomes one of law rather than of fact. As the Supreme Court stated in *Mason v. Lyl Productions* (1968) 69 Cal.2d 79, at page 84 [69 Cal.Rptr. 769, 443 P.2d 193], citing *May v. New York Motion Picture Corp.* (1920) 45 Cal.App. 396, 404 to 405 [187 P. 785]: " 'Where the reasonableness of the master's order depends upon undisputed facts, and the inferences from the facts found or admitted all point one way, the question as to the reasonableness of the order or rule is one of law for the court and not a question of fact for the jury. Where, however, the reasonableness of the order does not rest wholly upon undisputed facts, or its reasonableness is not so apparent that but one inference can reasonably be deduced from the proved or admitted facts, it is for the jury [in this case, the trial judge as the trier of fact] to determine whether the order is reasonable or not.' "

■ We are now asked to address the question whether Cerberonics had a right to demand of LeCompte she not allow a bidding competitor the right to use her resume. Labor Code section 2856 states: "An employee shall substantially comply with all the directions of his employer concerning the service on which he is engaged, except where such obedience is impossible or unlawful, or would impose new and unreasonable burdens upon the employee." It is conceded the demand was new and we must determine whether it was a reasonable burden on the employee, making her refusal "misconduct" warranting her discharge. ■ The employer has the burden of establishing "misconduct" to protect its reserve fund (*Maywood Glass Co. v. Stewart* (1959) 170 Cal.App.2d 719, 725 [339 P.2d 947]).

■ In any determination of misconduct, a court must equate the employee's conduct as evincing such wilful or wanton disregard of the employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has a right to expect of its employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability but not mere inefficiency, unsatisfactory conduct, inadvertencies or ordinary negligence (*Maywood Glass Co. v. Stewart, supra,* 170

Cal.App.2d 719, 724; and see *Lacy* v. *California Unemployment Ins. Appeals Bd., supra,* 17 Cal.App.3d 1128, 1132).

Any test of the reasonableness of a company rule must also consider whether the rule is consistent with public policy (*Syrek* v. *California Unemployment Insurance Appeals Board* (1960) 54 Cal.2d 519, 529 [7 Cal.Rptr. 97, 354 P.2d 625]). Looking at Business and Professions Code section 16600[2] we note the Legislature has proscribed contracts in restraint of one's profession, trade or business. ▆▆ Restraining an individual from seeking employment elsewhere violates this statement of public policy and constitutes an unreasonable burden on the employee.

While it must be conceded LeCompte's refusal to sign the certification had the appearance of assisting a Cerberonics' competitor in the bidding process, we must examine the directive for its reasonableness as applied to the employee. We believe it is entirely proper for an employee to seek gainful employment wherever it may be found, even with a competitor of the employer. Seeking a market for one's skills is the only way to guarantee continued employment or achieve advancement. It is a means of obtaining better working conditions, higher pay or more secure tenure, and is an appropriate aim for any working person. It is a reasonable and expected career enhancement objective. To deny the employee this right would impose an unreasonable burden.[3]

That its employees will seek career enhancement opportunities is a fact of life which an employer must expect, especially when the employee is given no promise of continued employment under the existing terms of employment. LeCompte was not revealing trade secrets; she was not violating any standards of conduct in the performance of her work; she was not careless, negligent or otherwise inattentive to the proper performance of her duties. She is guilty of no misconduct.

---

[2]Business and Professions Code section 16600 reads: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

[3]One should understand the obvious thought process of a person in LeCompte's position: If the competitor was the successful bidder for the government work based on resumes supplied by others, Cerberonics would no longer need her services and she would become unemployed; if she allowed both bidders to use her resume, she would enhance her chance of continued employment by one or the other company. It should be noted, however, the evidence does not indicate LeCompte in fact sent her resume to any other bidder. The firing here resulted solely from her refusal to sign the agreement with Cerberonics.

Under the circumstances, it is unnecessary for us to consider the issue of Le Compte's good faith refusal to comply based on the advice of counsel.

Brown (Gerald), P. J., and Staniforth, J., concurred.