Gerald W. SANDSTROM, Relator,

v.

**DOUGLAS MACHINE CORPORATION,**
**Department of Economic Security,**
**Respondents.**

**No. C2–85–519.**

Court of Appeals of Minnesota.

Aug. 6, 1985.

James V. Roth, Leonard, Street & Deinard, Minneapolis, for Gerald W. Sandstrom.

Paul R. Johnson, Tillitt, McCarten, Johnson & Drummond, Alexandria, for Douglas Mach. Corp.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Economic Sec.

Considered and decided by PARKER, P.J., and FOLEY and LESLIE, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

This is an appeal from a determination by the Commissioner of Economic Security that relator was discharged from his employment and was disqualified from receiving unemployment compensation benefits. We affirm.

## FACTS

Relator Gerald Sandstrom began working as a technical writer for the respondent on April 2, 1984. On June 19, 1984 the respondent initiated a policy requiring all employees who had access to confidential information to sign an employee classified information agreement. That agreement required the employees to promise, *inter alia,*

> not to remove or divulge to anyone, either during his employment or for five (5) years after the termination of his employment, any information acquired by him concerning * * * formulas, processes, methods of engineering and manufacture, or other classified and confidential information of the Company.

Relator received an explanation of the agreement by the personnel director on June 20, but indicated that he would probably not sign the agreement. Subsequently, relator was advised upon at least two occasions that failure to sign the agreement could lead to his termination. He was also offered the opportunity to sign the agreement and affix a separate disclaimer. Relator continually refused to sign, claiming that the agreement was too vague and extreme to be enforceable. Relator was discharged on July 13, 1984, for refusing to sign the agreement.

A referee determined that relator had been discharged for misconduct and a Commissioner's representative affirmed.

## ISSUE

Did relator's refusal to sign the employee classified information agreement constitute misconduct, justifying denial of unemployment compensation benefits?

## ANALYSIS

An individual will be disqualified from receiving unemployment compensation benefits where he has been "discharged for misconduct * * * connected

with his work or for misconduct which interferes with and adversely affects his employment." Minn.Stat. § 268.09, subd. 1(2) (1984). A definition of misconduct was enunciated by the supreme court in *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 204 N.W.2d 644 (1973):

> The intended meaning of the term 'misconduct' * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which an employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employers' interest or of the employee's duties and obligations to his employer. On the other hand, mere inefficiency, unsatisfactory conduct, failure in good performance as a result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' * * *.

*Id.* at 374–75, 204 N.W.2d at 646. (Citation omitted.) An employer has the burden of proving an employee's disqualification for benefits due to misconduct. *Plowman v. Copeland, Buhl & Co., Ltd.*, 261 N.W.2d 581, 585 (Minn.1977).

▇ The appellate courts in Minnesota have not addressed the specific issue of whether failure to sign a confidentiality agreement constitutes misconduct. Our courts and the courts of other states, however, have discussed whether failure to accede to a request of an employer should be considered misconduct. The general rule is that if the request of the employer is reasonable and does not impose an unreasonable burden on the employee, a refusal will constitute misconduct. *See Hollar v. Richard Manufacturing Co.*, 346 N.W.2d 692, 694 (Minn.Ct.App.1984). What is "reasonable" will vary according to the circumstances of each case. *See Hollar* (request for a minimal amount of overtime was not so unreasonable as to justify refusal);

*Green v. Iowa Department of Job Service*, 299 N.W.2d 651 (Iowa 1980) (employee's refusal to sign a reprimand was unreasonable and constituted misconduct where the signature would merely acknowledge receipt of notice); *Semon v. Pennsylvania Unemployment Compensation Board of Review*, 53 Pa.Cmwlth. 501, 417 A.2d 1343 (1980) (employee's failure to submit to a psychiatric examination at the request of the employer was unreasonable under the circumstances); *Kresge v. Pennsylvania Unemployment Compensation Board of Review*, 46 Pa.Cmwlth. 78, 405 A.2d 1123 (1979) (failure to comply with employer's reasonable request that nurse's aides sign a sheet indicating that they had read instructions constituted misconduct); *Simpson v. Pennsylvania Unemployment Compensation Board of Review*, 69 Pa. Cmwlth. 120, 450 A.2d 305 (1982) (if refusal to comply with a request of employer is justifiable or reasonable under the circumstances, it will not be considered misconduct precluding unemployment benefits). *Cf. Singleton v. Ross*, 82 A.D.2d 952, 440 N.Y.S.2d 767 (1981) (refusal to acknowledge receipt of a memorandum notifying the employee that she was on probation was not misconduct, even if her reason for refusal was unjustified); *Standard Automotive Parts Co. v. Michigan Employment Security Commission*, 3 Mich.App. 561, 143 N.W.2d 135 (1966) (refusal to sign a loyalty oath would not be considered misconduct, although actual assistance to an organizing union by a supervisor could be misconduct).

▇ Cases involving covenants not to compete are more closely scrutinized, and failure to sign will seldom constitute misconduct in the absence of separate consideration. *See Bott v. Administrator, Unemployment Compensation Act*, 25 Conn. Sup. 307, 203 A.2d 241 (1964) (where employee was under no obligation to restrict her manner of earning a living in the future, refusal to sign a restrictive covenant was not unreasonable). The Minnesota courts have looked upon these covenants with disfavor, particularly in the absence of

separate consideration. *See Kari Family Clinic of Chiropractic, P.A. v. Bohnen,* 349 N.W.2d 868, 869 (Minn.Ct.App.1984); *Freeman v. Duluth Clinic, Ltd.,* 334 N.W.2d 626, 630 (Minn.1983). Covenants not to compete are in partial restraint of trade, however, and are more restrictive than the agreement which the relator was required to sign in this case.

■ In *Cerberonics Inc. v. California Unemployment Insurance Appeals Board,* 152 Cal.App.3d 172, 199 Cal.Rptr. 292 (Cal.App.1984) the court noted that any test of reasonableness must take into consideration whether an employer's request is consistent with public policy. Here, as noted by the Commissioner's representative, the employee classified information agreement was reasonably calculated to protect the interests of the respondent under the Uniform Trade Secrets Act—Minn.Stat. ch. 325C (1984). That Act requires that a manufacturer take reasonable steps to maintain its trade secrets. *Id.* at § 325C.01, subd. 5(ii). In *Aries Information Systems, Inc. v. Pacific Management Systems Corp.,* 366 N.W.2d 366 (Minn.Ct.App.1985) we stated:

> Aries' greatest exposure arose from its own employees. It is difficult, if not impossible, to prevent an employee from discovering his employer's trade secrets. Aries took reasonable steps to maintain the secrecy of POBAS III by having [its employees] sign confidentiality agreements. Although appellants assert that the agreements were invalid for lack of separate consideration, the contention is meritless. It is a valid employment requirement. The agreements, which were read and signed, communicated to appellants that all Aries' information was confidential.

*Id.* at 369. Respondent's request that employees sign a confidentiality agreement under these circumstances was therefore reasonable.

Relator argues that the agreement was overly vague and did not warn him of the material which was to be kept confidential, citing *Josten's Inc. v. National Computer Systems, Inc.,* 318 N.W.2d 691, 702 (Minn. 1982). However, in the present situation relator was offered the opportunity to sign the agreement and attach a disclaimer. In addition, relator objects to the fact that respondent did not present him with the agreement until after he began working. However, we believe in this instance the nature of relator's position should have put him on notice that information he would acquire during the course of his employment would be confidential.

Although under certain circumstances an employer's demand for a five year period of non-disclosure might perhaps be unduly harsh, in the present situation we do not see how a technical writer's livelihood would be impaired by an agreement not to disclose information concerning his employer's formulas, processes, or methods of engineering and manufacture. Under these circumstances, we find that relator's refusal to sign the agreement constituted misconduct, disqualifying him for unemployment compensation benefits.

## DECISION

Relator's refusal to sign an employee classified information agreement constituted misconduct. The decision of the Commissioner's representative is affirmed.

Affirmed.