23430

Douglas E. MICKENS, Respondent v. SOUTHLAND EXCHANGE-JOINT
   VENTURE and South Carolina Employment Security Commission,
   Appellants.

(406 S.E. (2d) 363)

Supreme Court

*William H. Griffin* and *Sandra D. Bell*, both of *South Carolina Employment Sec. Com'n*, Columbia, *for appellant South Carolina Employment Sec. Com'n.*

*Fred W. Suggs, Jr.*, of *Ogletree, Deakins, Nash, Smoak and Stewart*, Greenville, *for appellant Southland Exchange-Joint Venture.*

*John E. Parker*, Hampton, *for respondent.*

Heard Feb. 19, 1991.

Decided July 8, 1991.

CHANDLER, Justice:

Southland Exchange Joint Venture (Southland) and the South Carolina Employment Security Commission (Commission) appeal a Circuit Court Order finding Douglas Mickens (Mickens) entitled to unemployment compensation.

We affirm.

## FACTS

Mickens was employed as a materials handler for Southland at its Hampton, South Carolina, plant. Upon his employment, he signed a "Confidentiality and Non-Competition Agreement" which states, in part:

> I understand that during the course of my employment with Southland Exchange Joint Venture (the "Company"), I will become privy to certain confidential information which is proprietary in nature and strictly the property of the Company. Such information shall include, but not necessarily be limited to, technical information and data in respect of the Company's products, plans, policies, programs, manuals, plants, processes, costs,

equipment, operations, procedures, customer lists, contracts, and the chemical composition or quantity of waste delivered or processed. I will not during the course of my employment with the Company, or at any time thereafter, reveal such information to any other party except as is necessary in the course of my employment with the Company or as may be required by any laws or by any governmental regulatory authority without the prior written consent of the Company.

On March 20, 1989, Mickens attended a press conference at which TV news reporters were present. Southland produced no evidence that Mickens made any comment at the conference.

Southland issued Mickens what it termed a "final warning," stating that his attendance at the press conference had violated Company policy, and that "[a]ny further violation . . . may result in termination of employment." When Mickens refused to sign the warning statement, he was fired.

Mickens' claim for unemployment compensation was denied for a thirteen week period[1] on the ground that he had been discharged "for cause."

Circuit Court reversed, finding (1) the confidentiality agreement did not prohibit Mickens' *attendance* at a press conference, (2) there was no evidence Mickens discussed any confidential information at the meeting, (3) his refusal to sign the warning under these circumstances could not be deemed misconduct, and (4) that Commission's denial of benefits violated Mickens' constitutional right of free speech.

## ISSUES
1. Did Circuit Court correctly hold that Mickens was not discharged for cause?
2. Did denial of benefits violate Mickens' constitutional right of free speech?

---

[1] Under S.C. Code Ann. § 41-35-120 (1986), if the Commission finds a discharge for cause the employee is ineligible for benefits for a period not less than five, nor more than twenty-six weeks.

## DISCUSSION

## I. DISCHARGE FOR CAUSE

Under the Administrative Procedures Act, S.C. Code Ann. § 1-23-380(g)(5) (1986), Circuit Court's scope of review was limited to whether there was substantial evidence that Mickens was discharged for cause. We agree with the trial judge that there was not.

Commission found that Mickens had violated the confidentiality agreement, thereby justifying Southland's requirement that he sign the warning. His refusal to do so was held to violate the standard of behavior Southland had a right to expect.

In *Lee v. S.C. Employment Security Commission,* 277 S.C. 586, 291 S.E. (2d) 378 (1982), we interpreted the phrase "discharge for misconduct"[2] to include "the disregard of the standard of behavior which an employer can *rightfully expect* from an employee." 277 S.C. at 588, 291 S.E. (2d) at 379. (Emphasis supplied). We have not had occasion to determine what behavior an employer may rightfully expect. However, the general rule is that, where the employer's request is *reasonable,* a refusal to comply will constitute misconduct, justifying a discharge for cause. *See, e.g. Sandstrom v. Douglas Machine Corp.,* 372 N.W. (2d) 89 (Minn. App. 1985); *Simpson v. Commonwealth Unemployment Compensation Board,* 69 Pa. Cmwlth. 120, 450 A. (2d) 305 (PA 1982); *Cf., Singleton v. Ross,* 82 A.D. (2d) 952, 440 N.Y. S. (2d) 767 (1981). "What is 'reasonable' will vary according to the circumstances of each case." *Sandstrom, supra,* 372 N.W. (2d) at 91. Not only must the reasonableness of the employer's request be evaluated, but also the employee's reason for noncompliance. *Simpson, supra.*

Here, nothing in the confidentiality agreement proscribes Mickens' *attendance* at a press conference.

Moreover, nothing in the record discloses that any confidential information was released at the conference. In short, there is no evidence that Mickens did, in fact, violate company policy. We find Southland's requirement that Mickens sign a "final warning" prohibiting him from *further* violation of Company policy unreasonable. Such a restriction would render his

---

[2] S.C. Code § 41-35-120(2) (1976) was amended by 1985 Act No. 154, § 6 to substitute the term "cause" for "misconduct."

mere attendance at a future press conference cause for discharge. As the confidentiality agreement did not prohibit Mickens' attendance at such a meeting, his refusal to sign the warning was justified.[3]

## II. FREE SPEECH

Southland cites *Knopf, Inc. v. Colby*[4] for the proposition that, with respect to confidential information, an employee's entry into a confidentiality agreement constitutes a relinquishment of First Amendment rights. It conceded at oral argument, however, that Mickens was entitled to exercise his constitutional rights of free speech,[5] absent violation of the agreement.

As noted earlier, there was no evidence that confidential information was disclosed at the press conference.

We find that Mickens' right of free speech is abridged by Southland's proscription of his attendance at future press conferences, irrespective of a breach of the agreement. *See, Speiser v. Randall*, 357 U.S. 513, 78 S. Ct. 1332, 2 L. Ed. (2d) 1460 (1958); *Jannetta v. Cole*, 493 F. (2d) 1334, 1337 (4th Cir. 1974). (denial of a valuable government benefit may not be predicated on one's exercise of First and Fourteenth Amendment rights).

The judgment below is

Affirmed.

GREGORY, C.J., and FINNEY and TOAL, JJ., concur.

HARWELL, J., dissenting in separate opinion.

HARWELL, Justice, dissenting:

I respectfully dissent. It is my opinion that the circuit court exceeded its authority under its scope of review as set forth in the Administrative Procedures Act. There is substantial evidence in the record to support the Commission's finding that

---

[3] The effect of the dissenting opinion is chilling: it holds an employee guilty of misconduct, rendering him ineligible for thirteen weeks unemployment benefits, for refusing to sign a document containing an admission of wrongdoing when, in fact and truth, there has been no wrongdoing.

[4] 509 F. (2d) 1362, 1370 (4th Cir. 1975), *cert. denied* 421 U.S. 992, 95 S. Ct. 1999, 44 L. Ed. (2d) 482.

[5] *See* U.S. Const., amend. I; S.C. Const. art. I, § 2.

Mickens was properly terminated for cause connected with his employment and that Mickens' resulting unemployment was secured through fault of his own. Thus, I would reverse the order of the circuit court and reinstate the order of the Commission which denied Mickens unemployment benefits.

On appeal, the circuit court reversed the order of the Commission, finding that there was no substantial evidence supporting Mickens' discharge for cause. The circuit court and the majority found that nothing in the confidentiality agreement proscribed Mickens' attendance at a press conference. They also held that nothing in the record disclosed that any confidential information was released at the conference. The circuit court and majority concluded that since there was no evidence that Mickens did, in fact, violate the confidentiality agreement, Southland's requirement that Mickens sign a warning prohibiting him from further violation of its policy, was unreasonable and thus, his refusal to sign the warning was justified. As an alternative for reversing the order of the Commission, both the circuit court and the majority held that Mickens' right of free speech had been abridged. Southland Exchange filed an appeal with this Court arguing that the circuit court: (1) erred in substituting its own findings of fact for those of the Commission because the Commission's findings were supported by substantial evidence; (2) erred in reversing the Commission's conclusions of law because the Commission's conclusion that Mickens had been discharged for cause was correct as a matter of law; and (3) erred in finding that Mickens' constitutional rights had been violated.

After a party has exhausted all administrative remedies available within an agency and is still aggrieved by a final decision in a contested case, he is entitled to judicial review. S.C. Code Ann. § 1-23-380(a) (1986). If a party is still aggrieved upon final judgment of the circuit court, that party may appeal to this Court. S.C. Code Ann. § 1-23-390 (1986). The scope of review is set forth by the Administrative Procedures Act. S.C. Code Ann. § 1-23-380(g) (1986). Section 1-23-380(g)(5) states in pertinent part:

(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court may reverse or modify the decision

if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(5) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record ...

The language that is quoted above has often been referred to as the "substantial evidence" rule. The "substantial evidence" rule of the Administrative Procedures Act has been held to be the applicable standard of review for appeals from the South Carolina Employment Security Commission. *See DeGroot v. S.C. Employment Sec. Comm'n*, 285 S.C. 209, 328 S.E. (2d) 668 (Ct. App. 1985). "Substantial evidence" has been defined as something less than the weight of the evidence; it is evidence which would allow reasonable minds to reach the conclusion the administrative agency reached. *Id.* Thus, upon review of the Commission's decision, the circuit court must affirm the findings of the Commission if they are supported by substantial evidence. *Merck v. S.C. Employment Sec. Comm'n*, 290 S.C. 459, 351 S.E. (2d) 338 (1986). It follows that the circuit court, as well as this Court, is without authority to substitute its judgment for that of the Commission when the Commission's determinations are supported by substantial evidence.

Even if there was no substantial evidence to support a finding that Mickens violated the confidentiality agreement by merely attending the press conference or by revealing confidential information at the press conference, there is substantial evidence supporting the Commission's finding that Mickens had violated company policy by failing to comply with Southland's disciplinary procedures and hence, was guilty of misconduct for which he was properly discharged for cause connected with the employment.

The case of *Lee v. S.C. Employment Sec. Comm'n*, 277 S.C. 586, 291 S.E. (2d) 378 (1982), involved an appeal to the Court to determine whether the employee had been properly disqualified from receiving unemployment compensation benefits. The single commissioner, the full commission, and the circuit court "agreed Lee [had been] discharged for cause connected with his work pursuant to § 41-35-120(2), S.C. Code of Laws, (1976), and thus disqualified from receiving benefits."

*Lee*, 277 S.C. at 587, 291 S.E. (2d) at 378. At *that* time, the statute provided for the denial of unemployment benefits when the employee had been "discharged for *misconduct* connected with his most recent work . . ." (emphasis added). S.C. Code Ann. § 41-35-120(2) (1976).[1] The Court in *Lee*, observed that: "In determining the meaning of the term 'misconduct' we must look to the general purpose of the act. *Stone Mfg. Company v. S.C. Employment Security Commission, et al.*, 219 S.C. 239, 64 S.E. (2d) 644 (1951)." *Lee*, 277 S.C. at 588, 291 S.E. (2d) at 379. In discerning the general purpose of the act, the Court in *Lee* looked to S.C. Code Ann. § 41-27-20 (1976), which provided that:

> The General Assembly therefore declares that in its considered judgment the public good and the general welfare of the citizens of this State require the enactment of this measure, under the police powers of this State, for the compulsory setting aside of unemployment reserves to be used *for the benefit of persons unemployed through no fault of their own* (emphasis in original).

*Lee*, 277 S.C. at 588, 291 S.E. (2d) at 379.

In *Stone, supra*, we held that the term "fault" as used in the old version of Section 41-27-20 and which is virtually identical to the amended version of Section 41-27-20, was not limited to something that was blameworthy, culpable or wrong and that "fault" had to be construed as meaning failure or volition. *Stone*, 219 S.C. at 246-247, 64 S.E. (2d) at 646. This interpretation of "fault" was reiterated in *Lee*. Hence, "misconduct" was broadly construed to include *practically any* volitional act of the employee. In *Lee*, the Court's construction of "misconduct" which included practically any volitional act of the employee, was limited only by the following language:

> A review of cases generally indicates 'misconduct' includes (1) the wanton and wilful disregard of the employer's interests; (2) the deliberate violation of rules; (3) the disregard of the standard of behavior which an em-

---

[1] As stated in the majority opinion and discussed later in my dissent, S.C. Code Ann. § 41-35-120(2) (1976) was amended after *Lee* in 1985 by Act No. 154, § 6(2). The amendment substituted the term "cause" for "misconduct." *See* Act. No. 154, 1985 Acts 580.

ployer can rightfully expect from an employee; or (4) intentional and substantial negligent disregard for the [employer's] interests . . .

*Lee*, 277 S.C. at 588, 291 S.E. (2d) at 379, *citing Pettey v. Commonwealth Unemployment Compensation Bd. of Review*, 15 Pa. Commw. 157, 325 A. (2d) 642 (1974). I interpret *Lee* as standing for the proposition that when an employee intentionally or volitionally commits an act which is contrary to the employer's interests or in disregard of the standard of behavior an employer can rightfully expect from an employee, regardless of whether the employee intended to harm the employer, there is sufficient statutory "misconduct" under Section 41-35-120(2) so as to deny that employee unemployment benefits. These same principles are applicable here where Mickens' failure to commit an act, that of signing the warning and agreeing to continue to abide by the confidentiality agreement he had previously signed, demonstrated an intentional disregard of Southland's interests. Thus, according to the language in *Lee*, Mickens' actions could constitute employee "misconduct" even without the violation of any rules, such as those contained in the confidentiality agreement.

After *Lee*, and in 1985, the General Assembly amended Section 41-35-120(2) which denied unemployment benefits when the employee had been "discharged *for misconduct* connected to his most recent work," to state that an employee would be denied unemployment benefits when the employee had been "discharged *for cause* connected with his most recent work. . . ." (emphasis added). However, the General Assembly did not substantively amend Section 41-27-20, the section that sets forth the purpose of the South Carolina Employment Security Law and was used by the Court in *Lee* to construe the earlier version of Section 41-35-120(2). It is my opinion that the "for cause" language contained in the amended version of Section 41-35-120(2) is as broad a term as "misconduct," the language contained in the old version of Section 41-35-120(2) and that the General Assembly merely amended Section 41-35-120(2) to better comport with both the language and our holding in *Lee*. Therefore, I would interpret the term "misconduct," to be synonymous with the term "for cause."

Applying the law to the facts of this case, I find that there is substantial evidence which supports the Commission's finding that Mickens was properly discharged for cause connected with the employment irrespective of whether he breached the confidentiality agreement. The circuit court and the majority of this Court held that since the confidentiality agreement did not prohibit attendance at a press conference and because there was no evidence that Mickens disclosed confidential information in violation of the confidentiality agreement, it was unreasonable for Southland to require Mickens to sign a warning prohibiting him from further violation of company policy. They concluded that Mickens' refusal to sign the warning was justified and thus, he was not properly terminated for cause. I disagree with their holding as well as their reasoning as the record more than adequately reflects that Mickens was terminated not because he attended the press conference or because he *may* have revealed information in violation of the confidentiality agreement, but for the reasons that he refused to sign the warning and refused to agree not to breach the confidentiality agreement in the future.

*Lee* does not state that a deliberate violation of the employer's rules is the only ground for discharge for "misconduct," and under my interpretation, "for cause." Rather, *Lee* states that an employee may be denied unemployment benefits when he is properly discharged under the statute because his actions reveal a disregard of the employer's interest or the standard of behavior which an employer can rightfully expect from an employee. It is undisputed that Mickens was not terminated after he attended the press conference. It was not until Mickens refused to acknowledge the written warning and to agree not to violate the confidentiality agreement that Southland elected to release Mickens from its employ. Although the warning did state that Mickens had attended the press conference and that he had violated Southland's company policy, the language of the form did not require Mickens to concede that he had violated the confidentiality agreement or any other rule. Mickens' signature would have merely indicated that he had read and understood the contents of the warning. Moreover, the warning provided a space for Mickens to voice his concurrence or disagreement with Southland's statement and to explain the reasons for his disagreement.

Not only did Mickens fail to utilize this opportunity, but he simply refused to even read the warning. As the Commission found, Mickens "could really offer no explanation as to why he would not acknowledge the written warning, an agreement to abide by the confidentiality arrangement *in the future*." (emphasis added). I agree with the Commission's findings that:

> [I]t was within reason for the employer to expect the claimant to acknowledge such warning and agree not to violate confidentiality in the future. In our opinion, the claimant's refusal showed a disregard of the standard of behavior the employer had a right to expect of him. . . .

As is obvious from the evidence reviewed above, the record contains evidence in support of the Commission's decision which far exceeds the requirements of the substantial evidence test. Regardless of whether Mickens violated the confidentiality agreement by either merely attending the press conference, or by revealing confidential information at the press conference, it is clear that Mickens was properly discharged for cause connected with the employment because of his failure to comply with Southland's reasonable request that he acknowledge the warning and agree to abide by the confidentiality agreement in the future. Mickens' volitional refusal to comply with Southland's reasonable request constituted a blatant disregard of the standard of behavior Southland had a right to expect of him, and was contrary to Southland's interests.

As a second basis for reversing the Commission's order, the circuit court and the majority held that Mickens' right of free speech had been abridged by Southland's proscription of his attendance at future press conferences, irrespective of a breach of the agreement. While I recognize that constitutional issues often impact on cases of this nature, this issue need not be addressed as neither the confidentiality agreement nor the warning prohibited Mickens from attending a meeting of the press in the future. Again, Mickens was terminated by Southland not because he attended the press conference or because of anything that he may have said at the meeting in violation of the confidentiality agreement, but for the simple reason that he volitionally failed to acknowledge the warning and refused to agree to abide by the confidentiality agreement in the future.

As discussed above, the Commission's findings and conclusions are clearly supported by substantial evidence. Therefore, what my view of the evidence would have been if I had been in the Commission's place, is irrelevant. While I sympathize with Mickens, I am restrained by the applicable standard of review as set forth in the Administrative Procedures Act from substituting my judgment for that of the Commission's where as here, its findings and conclusions are supported by substantial evidence. Although I would not necessarily have reached the same conclusion as the Commission, my review is limited and it does not permit me to "pick and choose" from the testimony those portions of the testimony to support what I might believe to be the correct result. These principles would hold true to the circuit court as well. To hold otherwise would thwart the purpose of the Commission, and its proceedings would be a waste of time and other resources if upon judicial review, a court could completely disregard the findings and conclusions of the Commission based on its view of the evidence and what the result should be. When an agency's decision as here, is supported by substantial evidence, this Court has no choice but to affirm that agency's decision.

Based on the foregoing discussion, and with due respect to the majority, I would reverse the order of the circuit court, who in my opinion, clearly exceeded its authority under the Administrative Procedures Act's scope of review, and reinstate the order of the Commission denying Mickens unemployment benefits.