743 S.E.2d 854

AnMED HEALTH, Appellant,

v.

SOUTH CAROLINA DEPARTMENT OF EMPLOYMENT AND WORKFORCE and Pamela S. Crowe, Respondents.

Appellate Case No. 2012–207906.

No. 5136.

Court of Appeals of South Carolina.

Heard March 13, 2013.

Decided May 22, 2013.

Stuart M. Andrews, Jr. and Gary L. Capps, Nelson Mullins Riley & Scarborough, LLP, of Columbia, for Appellant.

Debra S. Tedeschi, of Columbia, for Respondent South Carolina Department of Employment and Workforce.

Alexander D. Paterra, Paterra & Osmer, LLC, of Greenville, for Respondent Pamela S. Crowe.

FEW, C.J.

AnMed Health fired Pamela Crowe because she refused to comply with its policy requiring her to get a flu shot. When Crowe applied for unemployment benefits, AnMed claimed it fired her for cause and she was disqualified from receiving benefits. The South Carolina Department of Employment and Workforce found Crowe was not discharged for cause and therefore was eligible to receive benefits without disqualification. We affirm.

## I. Facts and Procedural History

AnMed is a hospital in Anderson. Crowe began working for AnMed in 1984. As a benefits coordinator, she had no direct contact with patients. Crowe is fifty-eight years old and has never had a flu shot.

In 2001, Crowe's then nineteen-year-old daughter Nicole got a flu shot. Within a few days, numbness spread through Nicole's body. When the numbness reached Nicole's chest, she had trouble breathing. An ambulance took her to a hospital, where she stayed for ten days. Nicole's neurologist first told the family Nicole had a disease called Guillain–Barré syndrome. He later determined she had a different disease, multiple sclerosis. The neurologist told Crowe that Nicole's flu shot "very well could have activated" the disease.

Nicole suffered over the next several years while she attempted to live a normal life. The medications she took to treat her disease eventually caused liver failure. Nicole died in 2007 from complications caused by her medications.

In 2010, AnMed adopted a policy entitled, "Influenza Immunization Protocol." The first sentence of the policy states, "To protect patients, visitors, and other health care workers [ ], the influenza vaccination will be viewed as a health competency and patient safety requirement." Under the policy, each employee must get a flu shot unless AnMed grants the employee an exemption. The policy provides an employee

> may request an exemption from vaccination based on guidelines from the Centers for Disease Control (CDC). Those CDC guidelines for exemptions currently include, severe egg allergy, severe allergy to any component of the vaccine, a past severe reaction to the influenza vaccine, or a history of Gillian–Barre [sic] syndrome. NO OTHER FORM OF OR REASON FOR EXEMPTION WILL BE MADE.

The policy provides that each exemption request will be considered "on a case by case basis." Finally, the policy requires that an employee be fired if she does not get a flu shot or an exemption.

At the time Crowe refused to get a flu shot, she believed her daughter Nicole's disease was a genetic disorder that became active when Nicole got her flu shot. Crowe's doctor,

Erin Cooksey, told her she should not get a flu shot. Dr. Cooksey wrote a note saying, "This patient must be medically exempt from the flu shot. She has a strong family history of Guillian–Burr [sic] and MS. The flu shot can activate these processes and must be avoided!" Crowe testified she was afraid that if she got a flu shot, what happened to Nicole would happen to her.

Crowe asked AnMed for an exemption. In her exemption application, Crowe gave AnMed a copy of Dr. Cooksey's note and a letter in which Crowe explained what happened to Nicole. Crowe wrote that "for genetic and medical reasons I don't want to put the flu shot into my body and possibly activate the same gene that could eventually cause death!"

Crowe's request did not meet any of the policy's grounds for an exemption, so AnMed denied the request. AnMed instructed Crowe to get a flu shot, but she did not do so. As she later testified, "Why would I want to put something in my system, even if it meant me being able to keep my job, that eventually killed my child when we have the same genes?"

AnMed fired Crowe for not getting a flu shot. Crowe filed a claim with the South Carolina Employment Security Commission for unemployment benefits. A commission claims adjudicator found AnMed discharged Crowe for cause and ruled she was disqualified from receiving benefits for ten weeks.

Crowe filed an appeal to the commission's appeal tribunal. While the appeal was pending, the commission's functions were transferred to the Department of Employment and Workforce. *See* Act No. 146, 2010 S.C. Acts 1168. A department appeal tribunal held a hearing and issued an order reversing the claims adjudicator's decision. AnMed filed an appeal to the department's appellate panel, which affirmed the tribunal's decision. The appellate panel found AnMed failed to prove it discharged Crowe for cause:

> The employer's policy requiring immunization for continued employment was unreasonable, particularly as applied to the claimant's unique circumstances. The claimant worked for the employer for 26 years without an immunization requirement, did not have patient contact in the performance of her duties, and presented credible medical documentation that

such an immunization would jeopardize her health. Therefore, we find the claimant was discharged without cause connected with her employment.

AnMed appealed to the administrative law court. The ALC found substantial evidence supported the appellate panel's decision, and affirmed.

## II. Whether AnMed Discharged Crowe for Cause

Under subsection 41–35–120(2) of the South Carolina Code (Supp.2010),[1] if the department finds that an insured worker "has been discharged for cause connected with h[er] most recent work," she is ineligible for unemployment benefits for a period of time between five and twenty-six weeks.

The issue in this case is very narrow. It is not whether AnMed's policy is reasonable as it applies to other AnMed employees, or even whether AnMed acted reasonably in applying it to Crowe. It is not whether Guillain–Barré syndrome or multiple sclerosis are genetic disorders, or whether getting a flu shot can, in fact, cause someone to suffer from those diseases. To determine whether Crowe was disqualified from receiving unemployment benefits, the only question for the department to answer was whether Crowe's refusal to comply with AnMed's policy was reasonable under her unique circumstances.

### A. The Reasonableness of AnMed's Application of Its Policy to Crowe

The department's appellate panel found AnMed's decision to require Crowe to get a flu shot was unreasonable. As part of its decision to affirm the department's order, the ALC found substantial evidence to support that ruling. We disagree.

The standard of review the ALC must apply to a factual determination by the department is set forth in section 1–23–380 of the South Carolina Code (Supp.2012). Subsection 1–23–380(5)(e) provides the ALC "may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclu-

---

1. The current version of section 41–35–120 reads differently. We are applying the version of the statute in effect when Crowe filed her unemployment benefits claim.

sions, or decisions are: ... (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." We have carefully examined the record before the department, and we do not find "reliable, probative, and substantial evidence" to support a ruling that a hospital's "health competency and patient safety requirement," designed "to protect patients, visitors, and other health care workers" by requiring all employees to have a flu shot, is unreasonable. The determination of how to protect patients from life-threatening illnesses such as influenza is a complicated medical and scientific evaluation that should be made by hospitals, not the Department of Employment and Workforce, the ALC, or this court. In fact, AnMed was required to make this evaluation. *See* 42 C.F.R. § 482.42 (2012) (mandating that hospitals maintain an "active program for the prevention, control, and investigation of infections and communicable diseases" to receive funding through Medicare and Medicaid). We find the department's decision that the application of the policy to Crowe was unreasonable is clearly erroneous and affects a substantial right of AnMed. We vacate the department's finding that AnMed's application of the policy to Crowe was unreasonable.

Vacating that finding, however, does not require us to reverse the ALC's judgment. Under the circumstances of this case, the department's finding was not a prerequisite to its ruling in Crowe's favor. In *Mickens v. Southland Exchange–Joint Venture,* 305 S.C. 127, 406 S.E.2d 363 (1991), our supreme court stated a "general rule" for analyzing whether an employee was discharged for cause—"where the employer's request is *reasonable,* a refusal to comply will constitute misconduct, justifying a discharge for cause. What is 'reasonable' will vary according to the circumstances of each case. Not only must the reasonableness of the employer's request be evaluated, but also the employee's reason for noncompliance." 305 S.C. at 130, 406 S.E.2d at 365 (emphasis in original) (internal citations and quotation marks omitted). In *Mickens,* the Employment Security Commission considered the reasonableness of both the employer's request and the employee's refusal. However, *Mickens* involved a situation that differs significantly from the one before us. In that case, Mickens signed a document in which he agreed not to disclose confidential company information. 305 S.C. at 128–29, 406

S.E.2d at 364. He later attended a press conference, but there was no evidence that he said anything at it. 305 S.C. at 129, 406 S.E.2d at 364. In response, Southland issued Mickens a written warning stating his attendance violated the confidentiality agreement and "further violation" may result in his termination. *Id.* When Mickens refused to sign the warning, he was fired. *Id.* Noting the confidentiality agreement did not prohibit Mickens' attendance at press conferences, the supreme court found Southland's request for Mickens to sign the warning was unreasonable and Mickens' refusal to sign was "justified." 305 S.C. at 130–31, 406 S.E.2d at 365.

*Mickens* involved an employer making a request that was unique to one employee and was based on the employer's perception of one specific act in which the employee had engaged. Accordingly, it was necessary to consider both the reasonableness of Southland instructing Mickens to sign a document indicating he had violated the confidentiality agreement and the reasonableness of Mickens' refusal to do so. In contrast, this case involves one employee's response to a hospital's company wide patient-safety policy that the hospital applied uniformly and according to the policy's terms. Under these circumstances, the reasonableness inquiry from *Mickens* necessarily focuses on the employee's refusal to comply with the policy.

### B. The Reasonableness of Crowe's Refusal to Comply

■ We affirm the department's decision that Crowe is not disqualified from receiving unemployment benefits because we find substantial evidence to support the department's determination that her refusal to comply with the policy was reasonable under her unique circumstances. *See Mickens,* 305 S.C. at 130, 406 S.E.2d at 365.

Crowe refused to get a flu shot because she believed doing so could cause her to suffer and die from a debilitating disease. Crowe watched that happen to Nicole several years earlier, and Nicole's doctor said the flu shot Nicole received just weeks before her symptoms began "very well could have" caused them. When Crowe asked Dr. Cooksey, her own doctor, for advice about getting a shot, Dr. Cooksey wrote that the vaccination "must be avoided!" These facts support the

department's finding that Crowe's refusal was reasonable under the circumstances. Therefore, we affirm the ALC's conclusion that the department's finding is not clearly erroneous because it is supported by reliable, probative, and substantial evidence.

AnMed argues Crowe's subjective beliefs about getting a flu shot were incorrect and Dr. Cooksey's opinion was not reliable. However, our analysis focuses on whether Crowe's actions were reasonable under her circumstances. The correctness of Crowe's subjective beliefs and the reliability of Dr. Cooksey's opinion are relevant to the objective reasonableness of Crowe's decision, but are not dispositive. Considering the record as a whole, we affirm the department's finding.

### III. Conclusion

The judgment of the ALC is **AFFIRMED.**

GEATHERS and LOCKEMY, JJ., concur.